1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ, | CASE NO. 1:10-cv-01773-AWI-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING (1) DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM AND (2) AMENDED COMPLAINT BE SERVED AS TO REMAINING PARTIES |
| v. | |
| MATHEW CATE, et al., | |
| Defendants. | |
| | (Doc. 21) |
| _____/ | THIRTY-DAY OBJECTION DEADLINE |

## I.   Procedural History

Plaintiff Andrew R. Lopez, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 and California law on September 10, 2010.  On March 8, 2012, the Court screened Plaintiff's complaint and ordered him to either file an amended complaint or notify the Court of his willingness to proceed only on his cognizable claims.  Plaintiff filed an amended complaint on March 23, 2012.

## II.   Screening Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)), and courts "are not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). While factual allegations are accepted as true, legal conclusions are not. Iqbal, 556 U.S. at 678.

While prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## III.   Plaintiff's Claims

### A.   Summary of Allegations[1]

Plaintiff, who is currently incarcerated at California State Prison-Corcoran (Corcoran) in the Security Housing Unit, brings this action against the following defendants for violating his rights in 2008 and 2009 at Corcoran: former California Department of Corrections and Rehabilitation (CDCR) Director Mathew Cate; former Warden R. Lopez; former Warden Derral G. Adams; Sergeants D. Beer, J. Martinez, A. Olmedo, and M. Drew; Lieutenants C. Munoz and S. Rousseau; Captain and Associate Warden F. P. Fields; Correctional Counselor M. White; Correctional Officers

---

[1] Plaintiff's amended complaint is identical to his original complaint, with the exception of additional citations to additional exhibits, the addition of his statement of compliance with the Government Claims Act, and the omission of the State of California as a defendant. Therefore, the Court's analysis of the amended complaint is virtually identical to its analysis of the original complaint.

1    R. Zamora, V. Espinosa, M. Jackson, R. Garcia, and Casillas; M. Gray, a nurse; and Does 1-100.

2    Plaintiff seeks damages, declaratory relief, and injunctive relief for the violation of his civil rights

3    under the First Amendment, the Eighth Amendment, and the Due Process Clause of the Fourteenth

4    Amendment of the United States Constitution, and under California law.

5         Plaintiff is an active jailhouse lawyer and vigorously defends his civil rights via the filing of

6    prison grievances and lawsuits, including a suit against Defendants Yale and Drew in which Plaintiff

7    alleges he prevailed.[2]  Plaintiff's litigation activities, which began in 1993, are well-known to prison

8    staff and as a result, not all held him in kind regard.

9         Against this backdrop, Plaintiff alleges that on October 30, 2008, at approximately 8:00 a.m.,

10   he was escorted to the Acute Care Hospital (ACH) on the prison grounds for an MRI of his spine.

11   Plaintiff alleges that he was intentionally kept at the ACH until approximately 1:40 p.m. to enable

12   Defendants Casillas, Garcia, Martinez, Beer, Rousseau, and Fields to orchestrate a retaliatory

13   housing transfer from 4B-4L, where he was actively engaged in assisting other inmates with their

14   litigation, to 4B-4R.  Plaintiff's MRI was completed by 9:00 a.m. and during the time Plaintiff was

15   held at the ACH, the transportation bus made two trips from the ACH to 4B-4L and Plaintiff

16   overheard the ACH control booth officer comment, "The 154 (a move slip) is cut [and] they're

17   moving his property now."  (Amend. Comp., ¶12.)

18        Plaintiff was then taken to cell 24 in 4B-4R.  Plaintiff's property was there but some legal

19   work was missing.  During the next six hours, staff ignored Plaintiff's repeated demands to speak

20   with a supervisor, including during cell counts, yard exchanges, supply and meal distribution, and

21   medication rounds, and despite Plaintiff covering his cell window, which is considered a safety issue

22   requiring a response from supervisory staff.

23        Another inmate later told Plaintiff that Defendant Garcia asked him for a favor on October

24   30, 2008, and told him that "they needed to move a jackass jailhouse lawyer to 4R[,] where Garcia

25   could curb [his] complaint filing and law library access."  (Id., ¶14.)

26   ///

27

28        [2] The Court takes judicial notice of case number 1:04-cv-05595-DLB Lopez v. Scribner, which was
     dismissed on October 6, 2008, with prejudice, following a settlement agreement reached on August 29, 2008.

On the same day, Defendant Olmedo ordered the confiscation of Plaintiff's property for ten days, which included Plaintiff's legal property, prescription glasses, shoes, medication, and all linen and clothing except for one pair of boxer shorts, socks, a t-shirt, a towel, and a sheet.

Plaintiff had been issued a medical chrono directing that he be restrained in waist chains rather than cuffed with his hands behind his back due to his spinal injuries. Despite the chrono, which Plaintiff alerted them to, Defendants Zamora and Espinosa cuffed his hands behind his back and escorted him to the 4B-4R rotunda holding cage. Defendants left Plaintiff in the holding cage for hours in handcuffs while other officers confiscated his property, despite his pleas that his hands and shoulders were numb and he was having severe back and right leg pain. At one point, each officer grabbed one of Plaintiff's hands and pulled them through separate bar slots in the cage. They then pulled down and out and twisted, causing Plaintiff to slam into the bars repeatedly and to suffer excruciating pain. Plaintiff was then removed from the holding cage and told to kneel on a chair, and his boxer shorts were cut off. Plaintiff lost his balance at one point and his right foot went out. Defendant Zamora stomped on it and told Plaintiff that should take his mind off his back. During these events, Defendants Munoz and Olmedo were present but they failed to intervene.

Approximately five minutes later, someone said to get Plaintiff a pair of boxer shorts and Defendant Munoz stated, "Dirty shorts." Thereafter, Defendant Jackson slipped a pair of boxer shorts over Plaintiff's feet and Defendants Zamora and Espinosa pulled them on Plaintiff. Plaintiff later discovered the boxer shorts were old and dirty, and had dried feces and blood all over the rear.

While Plaintiff was in the rotunda area, he advised Defendants Drew, Olmedo, and Munoz that per his medical order, he was to be restrained in waist chains and the handcuffs were causing him severe pain and numbness. Plaintiff also stated he needed his medication, his glasses, his medically prescribed shoes, and his missing legal work.

Defendant Drew said Plaintiff was telling the wrong guy because Plaintiff had named him in a lawsuit; Plaintiff should stop his "rambling legal bullshit," which is what got him moved; and Drew was sticking by his men. (Id., ¶23(a).) Defendant Olmedo said he did not care because Plaintiff frequently complained and filed paperwork. Defendant Munoz said Plaintiff did not "have shit coming," admitted that Plaintiff got moved for filing complaints, and said he intentionally

4

waited to respond so that he could earn overtime pay toward his boat payment and for Plaintiff to sue him because he viewed his defense by the Attorney General's Office against inmate suits as a tax refund. (Id., ¶23(c).)

During medication distribution at 4:30 p.m. and 7:30 p.m., Plaintiff told Defendant Gray, a nurse, to summon a psych tech and she refused. Plaintiff also told her about his prescriptions, pain, and injuries, to ensure the removal of his handcuffs, and to make sure his medications, glasses, and shoes were not withheld, but she refused and aided in the "code of silence." (Id., ¶27.)

Defendants Zamora and Espinosa subsequently escorted Plaintiff to cell 24 in 4B-4R. As they approached, Plaintiff's eyes began to burn and water, and he could see chemical agent dripping down the cell walls. Plaintiff slowed his pace and told Defendants the cell was uninhabitable. Defendant Zamora propelled him into the cell by twisting and pushing on the handcuffs and stated, "Yale says it is. You're going in. File on that." (Id., ¶29.) The door was closed and Defendant Zamora then pulled on Plaintiff's handcuffs several times, banging Plaintiff into the door. Although they were outside the cell, the fumes were making Defendants Zamora and Espinosa choke, but they left Plaintiff in the cell anyway.

Plaintiff's eyes shut and watered nonstop as he choked and laid on the floor against the gap under the door, gasping for air. An officer conducting count shortly thereafter saw Plaintiff's condition and removed him from his cell. Plaintiff was taken to the rotunda, where his eyes were still watering and he could not open them. Plaintiff could not breathe properly, mucus was streaming from his mouth and nose, his head pounded, his hands were numb, and his shoulders and back were in severe pain. Plaintiff thought he was going to die and as he sat there, he heard a male voice say to let him air out because they could not let the hospital see him like this, to get him a paper towel, and to air the cell out. The same person asked if anyone cleaned the cell out before putting him in there and a second male voice said he did not know, that it was third watch.

After Plaintiff aired out in the rotunda for a while, he was taken to the hospital. The trip was about three miles and Plaintiff was aired out along the way in the cold night air. Plaintiff sat in the hospital for about an hour, further airing out, before seeing a doctor.

///

The next morning, Plaintiff was taken to see an ophthalmologist for an eye examination. Plaintiff was still without his eyeglasses, shoes, or clothing except for the dirty boxer shorts, and he stubbed his toe and cut his left foot along the way. Plaintiff alleges that other inmates were staring and making comments and the whole experience was humiliating, degrading, and inhumane.

Plaintiff was later told by two witnesses that the cell had not been decontaminated properly. Plaintiff repeatedly requested his prescriptions, clothing, linens, and legal work, but he was told that the sergeant said no. Plaintiff finally received his eyeglasses and orthopedic shoes at 9:00 p.m. on October 31, 2008.

Plaintiff alleges that he was deprived of a towel and soap until November 3, 2008, and he was deprived of toilet paper, a toothbrush, and tooth powder until November 6, 2008.

Plaintiff began a hunger strike on October 31, 2008, to protest the withholding of his legal work. The strike lasted until November 10, 2008, during which time Plaintiff lost thirteen pounds.

On November 7, 2008, Plaintiff was escorted to the program office, where he explained to Defendants Fields and White that he was on a hunger strike because his legal property had been confiscated and he had deadlines to meet, he was being denied linens and clothing, which precluded him from attending yard, and the cell was freezing. Defendant Munoz was also present and when Plaintiff finished speaking, Defendant Fields looked at Defendant Munoz, who blamed Defendant Rousseau. However, Defendant Fields and White failed to take any action.

Housing staff still refused to give Plaintiff his legal property back and on November 9, 2008, Defendant Rousseau came by Plaintiff's cell and said, "Fuck you. Starve to death. Your legal bullshit is why I agreed to move you in the first place." (Id., ¶42.)

On November 10, 2008, Defendants Rousseau and Martinez each placed CDC form 128Bs (informational chronos) in Plaintiff's central file. Plaintiff alleges the chronos contain false, misleading information, subjected him to an additional thirty days of property deprivation, and were and will continue to be used against him during his parole hearings. Plaintiff alleges that the chronos were issued in retaliation against him for complaining on November 7, 2008. On November 10, 2008, Plaintiff was allowed to obtain his legal property relating to a court deadline he was able to demonstrate.

Plaintiff alleges that due to the deprivation of his clothing, he had to attend medical visits, the law library, and a pain management appointment in his underwear, and he could not use the exercise yard due to the cold weather or exercise indoors because he had no extra clothes to change into.  Plaintiff alleges that there was no heat, so he was perpetually cold and unable to sleep well, and he developed a rash and dandruff.  Plaintiff alleges that he was degraded, dirty, helpless, humiliated, depressed, and in despair.  Plaintiff also alleges that he suffered from hemorrhoids and rectal bleeding, which required a colonoscopy, and he was so cold at night that his entire body hurt.

Finally, on June 8, 2009, more than seven months later, Defendant Martinez came by Plaintiff's cell and told him he was giving him his clothes back now that it was warming up. Plaintiff was given a white laundry bag even though his unit's laundry bags were black, and he did not get his laundry back after he turned it over for laundering.

The next day, Defendant Martinez authored a chrono stating that Plaintiff lacked an adequate amount of clothing and that the clothing he did have had holes in it. The chrono authorized Plaintiff to possess one jumpsuit, two pairs of boxer shorts, two towels, two t-shirts, and 2 pairs of socks, which was still less than half of the state-mandated clothing allotment.  Plaintiff alleges that he continued to freeze and in retaliation against him for continuing to complain about having inadequate clothing and the disappearance of his laundry bag, Defendant Martinez authored and placed a false chrono in his central file stating he made a rope out of a sheet.  Plaintiff was charged for the cost without due process and the chrono will continue to be used against him during parole hearings.

Plaintiff further alleges that he has been targeted for assault or worse since early 2008 and his central file documents his incompatibility with any gang.  The majority of 4B inmates were therefore unwilling to assist or support Plaintiff, but four inmates did so.  On March 21, 2009, Defendant Garcia threatened one of the inmates with harassment for assisting Plaintiff and on July 25, 2009, another inmate was falsely charged with disciplinary violation at the behest of and with the approval of Defendant Beer.  The rules violation report also mentioned a third inmate who was of support to Plaintiff.

Defendant Beer had been the 4B-3 housing sergeant and during that time, he formed strong ties with validated gang affiliates there.  Defendant Beer became the 4B-4 housing sergeant around

July 2009. On July 22, 2009, Defendant Garcia told Plaintiff he was transferring him and when Plaintiff asked why, Defendant Garcia, after hesitating, said it was to put a validated inmate there. Plaintiff said he was validated and Defendant Garcia walked away as if angry. Plaintiff interpreted the planned move as a way of retaliating against him by separating him from his four inmate supporters, who were also his witnesses in a pending court case.

On July 24, 2009, V. Neri, a staff member with the law library, approved a legal assistance request between Plaintiff and inmate Avina, one of his four supporters. The request was forwarded to Defendant Beer to evaluate whether Plaintiff and Avina could be housed together in the same cell or the same section. A denial required Defendant Beer to document in a chrono the basis for his decision and to provide copies of the chrono for the law librarian, the facility captain, Plaintiff, inmate Avina, and both inmates' files. Defendant Beer failed to follow up on the request, despite phone calls from Neri. Plaintiff appealed the issue but his appeal received no response.

On September 30, 2009, Plaintiff was placed in the holding cage in the rotunda, where Defendant Beer tried to get him to accept a newly-arrived inmate as a cellmate. The inmate was associated with a prison gang that had a hit out on Plaintiff, so Plaintiff told Defendant Beer they were incompatible. Defendant Beer persisted and threatened to write Plaintiff up. Defendant Beer then had a subordinate confiscate Plaintiff's property; he told Plaintiff he was going to house Plaintiff in the hallway and put the new inmate in Plaintiff's cell, and then departed.

Defendant Beer returned while other officers were loading Plaintiff's property on a cart. Plaintiff told Defendant that taking his property and putting him in the hallway while putting a new inmate with no property into his cell under a circumstance of incompatibility was unlawful, retaliatory, and in contravention of prison policy. Defendant Beer became enraged and told Plaintiff to sue him because he did not "give a shit" and viewed automatic legal representation by the state to be a tax refund. (Id., ¶61.) Plaintiff said that was twisted thinking, and Defendant Beer called him a "fuck[ing] jailhouse lawyer," said he "was the new sheriff in town," and said he would issue Plaintiff a disciplinary violation and have Defendant Pina find him guilty because he liked to file complaints. Defendant Beer also said he was going to talk to "the shot callers about opening up a cell over there" where no one would back Plaintiff up over his legal work and "the heavy hitters"

could get a good look at Plaintiff and "deal with him." (Id.) Defendant Beer then said "white lightening takes care of its own," in reference to one of several prison employee gangs, before departing.

Defendant Beer came back later and told Plaintiff that the shot callers had assured him that if he transferred Plaintiff to 3R, none of them would support Plaintiff. Plaintiff told Defendant Beer he was assisting inmate Avina legally with approval from the law librarian and inmate Avina was also assisting him in drafting things, etc. Plaintiff also said that transferring him under the circumstances and placing an inmate compatible with 3R criteria into his 4R cell was not legitimate. Defendant Beer said he did not care and Plaintiff should think about that before he files another grievance.

Plaintiff alleges that he was in the rotunda holding cage for more than 4 ½ hours without food, water, a toilet, or his medication. Plaintiff was transferred to cell 9 in 4B-3R at approximately 1:30 p.m., with Defendant Rousseau's approval. Finally, Plaintiff alleges that the lighting and ventilation system in cell 9 do not work, and that he was denied one of his three weekly showers during his first five months in 4B-3R.[3]

**B.    Section 1983 Claims**

**1.    First Amendment Retaliation Claim**

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff has a protected right to file grievances and lawsuits and adverse action taken against him because of this exercise will support a claim for relief. Watison, 668 F.3d at 1114. The Court

---

[3] Plaintiff's remaining allegations, set forth in paragraphs 64 through 71, are not summarized. They consist of general, conclusory allegations against no specific parties and as a result, do not give rise to any viable claims for relief. Iqbal, 556 U.S. at 677-78; Moss, 572 F.3d at 969.

finds that Plaintiff has pled sufficient allegations to support claims for relief against Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, and Beer for retaliation, in violation of the First Amendment.

However, Plaintiff's allegations are not sufficient to state claims against Defendants Casillas and Gray. Plaintiff alleges only that while he was having his MRI, Defendant Casillas, along with Defendants Garcia, Martinez, Beer, Rousseau, and Fields, set in motion a series of events which led to his transfer to 4B-4R. (Amend. Comp., ¶11.) Unlike his allegations against Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, and Beer, there are no further facts demonstrating how Defendant Casillas was involved or supporting the existence of a retaliatory motive on Casillas's part. A conclusory allegation of involvement is insufficient to support a claim.

Likewise, Plaintiff's allegations against Defendant Gray, a nurse, lack the requisite tie to a retaliatory motive. (Id., ¶¶26-28.) Although Defendant Gray ignored Plaintiff's "instructions" to summon a psych tech and for medical care and other things, allegedly as part of the "code of silence," Plaintiff's complaint is devoid of any specific facts suggesting she ignored Plaintiff's requests in retaliation against him for filing grievances and lawsuits. (Id., ¶27.) Accordingly, Plaintiff fails to state a claim against Defendant Gray.

### 2. Eighth Amendment Claims

#### a. Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5, 112 S.Ct. 995 (1992) (citations omitted). For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. Although de minimis uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment, regardless of whether or not significant injury is evident. Hudson, 503 U.S. at 9-10; Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002).

///

The Court finds that Plaintiff's allegations state a viable excessive force claim against Defendants Zamora and Espinosa, Hudson, 503 U.S. at 9-10, as well as against Defendants Drew, Munoz, Olmedo, and Gray for failing to intervene, Lolli v. County of Orange, 351 F.3d 410, 418 (9th Cir. 2003); Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995), including during the extended, improper use of handcuffs, Wall v. County of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004); LaLonde v. County of Riverside, 204 F.3d 947, 960 (9th Cir. 2000).

### b.      Conditions of Confinement

Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.   Hudson, 503 U.S. at 9 (citations and quotations omitted).  In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  E.g., Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994); Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim, and "routine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).

Plaintiff's allegations regarding his placement in the cell contaminated with pepper spray state a claim against Defendants Zamora and Espinosa, and his allegations regarding the denial of adequate clothing and linens for more than seven months, during which time he suffered from extreme cold and was unable to exercise, state a claim against Defendants Olmedo, Fields, White, Munoz, and Rousseau.  However, Plaintiff has not linked any other named defendants to these events.  Although Plaintiff has described what amounts to generalized disdain for him, that alone is insufficient to state claims against any other staff members.  Plaintiff's allegations must be sufficient to demonstrate a linkage between the parties and the claims.

Plaintiff's allegations concerning the deprivation of his prescription eyeglasses and shoes for approximately eighteen hours, the deprivation of a towel and soap for approximately four days, and the deprivation of toilet paper, a toothbrush, and tooth powder for approximately seven days do not rise to the level of an Eighth Amendment violation. There are simply no facts pled that suggest these relatively short-term deprivations were substantial enough to implicate the Eighth Amendment. Johnson, 217 F.3d at 731-32. Likewise, the Court finds that while the allegation that Plaintiff was given dirty boxer shorts supports a retaliation claim, it falls short of supporting an Eighth Amendment claim. Although disgusting and undoubtedly degrading, the Court declines to find, based on the allegations presented, that the dirty shorts posed a substantial risk of harm to Plaintiff, Johnson, 217 F.3d at 731, or that it caused psychological pain so severe that it rose to the level of an Eighth Amendment violation, Watison, 668 F3d at 1113. Finally, the allegations that on September 30, 2009, Plaintiff was kept in the holding cage for more than 4 ½ hours without food, water, a toilet, or medication, and that he was transferred to a cell without adequate lighting or ventilation and he was only allowed to shower two times a week rather than three times a week do not demonstrate sufficiently grave conditions to support an Eighth Amendment claim. Johnson, 217 F.3d at 731-32; Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996).

### c.   Denial of Medical Care

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted). The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096 (quotation marks and citation omitted). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. Berry v. Bunnell, 39 F.3d 1056, (9 th Cir. 1994); McGuckin v. Smith, 974 F.2d

///

1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Although Plaintiff alleges various periodic separations from his medications, and from his orthopedic shoes and eyeglasses, these periodic, short-term separations, which are not accompanied by any showing of further injury, fail to support a claim for relief. Jett, 439 F.3d at 1096. Likewise, Defendant Gray's lack of responsiveness to Plaintiff's demand to see a psych tech does not support a claim. Id. The Court previously found an excessive force claim against Defendant Gray to failing to intervene when Plaintiff complained about the handcuffs and of the severe pain they were causing. However, the Court does not find that there are sufficient allegations to state a claim against Defendant Gray for knowingly disregarded a substantial risk of harm to Plaintiff's health via a result to provide medication or medical attention. Id.

### 3. Due Process Claim

Plaintiff alleges that he was deprived of his personal property, without due process of law. The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13, 104 S.Ct. 3194 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson, 468 U.S. at 533.[4]

Plaintiff's depiction of the relevant events, which include the wrongful, retaliatory confiscation of his personal property, does not support a claim. The type of behavior described by

---

[4] California provides an adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§810-895).

1  Plaintiff is clearly not authorized by the state and Defendants' unauthorized, bad-faith behavior does
2  not support a federal due process claim.  Hudson, 468 U.S. at 533.

3  **4.    Supervisory Liability Claims**

4          Plaintiff seeks to impose liability on former CDCR Director Cate, former Warden Lopez, and
5  former Warden Adams under a theory of supervisory liability.  Under section 1983, Plaintiff must
6  demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal,
7  556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010);
8  Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930,
9  934 (9th Cir. 2002).  Liability may not be imposed on supervisory personnel under the theory of
10  *respondeat superior*, as each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S.
11  at 676-77; Ewing, 588 F.3d at 1235.  Supervisors may only be held liable if they "participated in or
12  directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List,
13  880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011);
14  Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board
15  of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir.
16  1997).

17          Although Plaintiff attempts to plead otherwise, the basis for liability against Defendants Cate,
18  Lopez, and Adams is *respondeat superior*, which is not permissible.  Plaintiff's complaint sets forth
19  no facts supporting a claim that these defendants were directly involved in the violation of his rights
20  or that they knew of the violations and failed to intervene.  Accordingly, Plaintiff's supervisory
21  liability claims against Defendants Cate, Lopez, and Adam fail as a matter of law.[5]
22  ///
23  ///
24

25          [5] Plaintiff's contention, set forth in his separately filed notice, that he should be allowed to proceed against
26  Defendants Cate, Lopez, and Adams in their official capacities is addressed in section E(3) and in the final
   recommendation at 11.  (Doc. 22.)  Plaintiff may not proceed against Defendants Cate, Lopez, and Adams for
27  violating his rights via a theory of supervisory liability, as he is attempting to do.  Because Plaintiff may possibly be
   entitled to an order directing the expungement of documents from his central file which were placed there wrongfully
28  and out of retaliation against him, he may proceed, at this stage in the proceedings, on an official capacity claim
   against the Secretary of CDCR and the Warden of Corcoran, limited to injunctive relief.

C.  **State Law Claims**

1.  **Assault, Battery, and Negligence**

Plaintiff alleges state law tort claims of assault and battery against Defendants Zamora, Espinosa, Jackson, and negligence against all named defendants.

For an assault claim under California law, a plaintiff must show that (1) the defendant threatened to touch him in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the harm. Tekle v. U.S., 511 F.3d 839, 855 (9th Cir. 2007) (citation omitted).

For battery, a plaintiff must show that (1) the defendant intentionally did an act that resulted in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the contact caused injury, damage, loss, or harm to the plaintiff. Id. (citation and quotations omitted).

Under California law, the elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages). Corales, 567 F.3d at 572 (citing McGarry v. Sax, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008)) (quotation marks omitted).

The Court finds that Plaintiff states claims against Defendants Zamora, Espinosa, and Jackson for assault and battery, and against Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, Beer, and Gray for negligence. However, Plaintiff's amended complaint contains no facts which support a claim against Defendants Casillas, Cate, Lopez, and Adams for negligence.

2.  **Section 52.1**

Plaintiff alleges a claim for relief under section 52.1 of the California Civil Code, known as the Bane Act, which authorizes a claim for relief "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by

15

federal or state law."[6]  Jones v. Kmart Corp., 17 Cal.4th 329, 331 (1998).  A claim under section 52.1

requires "an attempted or completed act of interference with a legal right, accompanied by coercion."

Jones, 17 Cal.4th at 334; also Venegas v. County of Los Angeles, 32 Cal.4th 820, 843 (Cal. 2004);

Jones v. Kmart Corp., 17 Cal.4th 329, 334 (Cal. 1998);  Austin B. v. Escondido Union School

District, 57 Cal.Rptr.3d 454, 471-72 (Cal. Ct. App. 2007); McCue v. South Fork Union Elementary

School, 766 F.Supp.2d 1003, 1010-11 (E.D.Cal. 2011) (defining threats and finding complaint failed

to state section 52.1 claim); Fenters v. Yosemite Chevron, 761 F.Supp.2d 957, 996-98 (E.D.Cal.

2010) (discussing definition of threats, intimidation, and coercion within meaning of section 52.1).

The essence of a Bane Act claim is that a defendant, through threats, intimidation, or coercion, tried

to or did prevent the plaintiff from doing something that he had the right to do under the law or to

force the plaintiff to do something that he was not required to do under the law.  Austin B., 57

Cal.Rptr.3d at 472 (quotation marks omitted).

Plaintiff has stated a cognizable claim for retaliation in violation of the First Amendment,

and he may pursue a Bane Act claim against any participant who used threats, intimidation, or

coercion to interfere with that right.  Austin B., 57 Cal.Rptr.3d at 472.  The Court finds that Plaintiff

has sufficiently alleged the use of threats, intimidation, and/or coercion as to Defendants Garcia,

Zamora, Espinosa, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, and Beer.  Because

Defendant Jackson's only retaliatory act was assisting in putting the dirty boxer shorts on Plaintiff

and there is no allegation she said or did anything further, no Bane Act claim lies against her.

(Amend. Comp., ¶21.)

### 3.    Penal Code and Title 15 Violations

Plaintiff alleges claims for relief based on the violation of California Penal Code sections 147

and 2650 through 2653.[7]  A private right of action under a criminal statute has rarely been implied.

---

[6] Plaintiff's citation to section 52 is disregarded.  Section 52 provides for a private right of action for damages for violation of sections 51.5, 51.6, and 51.7.  Cal. Civ. Code § 52 (West 2011); Munson v. Del Taco, Inc., 46 Cal.4th 661, 667 (2009).  It does not provide Plaintiff with a separate legal claim for relief for the violation of his civil rights.

[7] Because California law provides for causes of action for assault and battery, discussed in subsection C(1), Plaintiff's citations to penal code sections 149, 240, and 242 are omitted from discussion in this section.

Chrysler Corp. v. Brown, 441 U.S. 281, 316, 99 S.Ct. 1705 (1979).  Where a private right of action has been implied, "'there was at least a statutory basis for interring that a civil cause of action of some sort lay in favor of someone.'"  Chrysler Corp., 441 U.S. at 316 (quoting Cort v. Ash, 422 U.S. 66, 79, 95 S.Ct. 2080 (1975)).  The Court has reviewed the penal codes sections in question and there is no language suggesting that civil enforcement of any kind is available to Plaintiff.  Cort, 422 U.S. at 79-80; Keaukaha-Panaewa Cmty. Ass'n v. Hawaiian Homes Comm'n, 739 F.2d 1467, 1469-70 (9th Cir. 1984); also Gonzaga University v. Doe, 536 U.S. 273, 283-86, 122 S.Ct. 2268 (2002) (basing a claim on an implied private right of action requires a showing that the statute both contains explicit rights-creating terms and manifests an intent to create a private remedy); Allen v. Gold Country Casino, 464 F.3d 1044, 1048 (9th Cir. 2006) (no private right of action for violation of criminal statutes).

Plaintiff also cites to various regulations under Title 15 of the California Code of Regulations.  There is no authority for the proposition that there exists a private right of action available to Plaintiff for violation of Title 15 regulations.  E.g., Parra v. Hernandez, No. 08cv0191-H (CAB), 2009 WL 3818376, at *8 (S.D.Cal. Nov. 13, 2009); Davis v. Kissinger, No. CIV S-04-0878 GEB DAD P, 2009 WL 256574, at *12 n.4 (E.D.Cal. Feb. 3, 2009), adopted in full, 2009 WL 647350 (Mar. 10, 2009).

Accordingly, the Court finds that Plaintiff's penal code and Title 15 claims fail as a mater of law.

D.    **State of California as a Party**

Although Plaintiff omitted the State of California as a party in the caption and in the section entitled "Defendants," his amended complaint nonetheless sets forth a claim for relief against the State.  (Amend. Comp., ¶85.)

Plaintiff's assertion that the State of California is a proper party pursuant to CA Const. art. 3, § 5 is without merit.  The Eleventh Amendment erects a general bar against federal lawsuits brought against the state and there is no exception present here.  Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010) (citing Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003)) (quotation marks omitted).  Section 5, article 3 provides that "[s]uits may be brought against the state in such

manner and in such courts as shall be directed by law." However, the provision does not constitute a waiver of Eleventh Amendment immunity, <u>Demshki v. Monteith</u>, 255 F.3d 986, 989 (9th Cir. 2001), and Plaintiff's federal and state claims against the state are barred, <u>Corales</u>, 567 F.3d at 573; <u>Demshki</u>, 255 F.3d at 989.

### E.   Forms of Relief Sought

#### 1.   Appointment of Counsel

In his amended complaint, Plaintiff seeks the appointment of counsel. Plaintiff does not have a constitutional right to the appointment of counsel in this action. <u>Palmer v. Valdez</u>, 560 F.3d 965, 970 (9th Cir. 2009); <u>Storseth v. Spellman</u>, 654 F.2d 1349, 1353 (9th Cir. 1981). The Court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1), but it will do so only if exceptional circumstances exist. <u>Palmer</u>, 560 F.3d at 970; <u>Wilborn v. Escalderon</u>, 789 F.2d 1328, 1331 (9th Cir. 1986). In making this determination, the Court must evaluate the likelihood of success on the merits and the ability of Plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. <u>Palmer</u>, 560 F.3d at 970 (citation and quotation marks omitted); <u>Wilborn</u>, 789 F.2d at 1331. Neither consideration is dispositive and they must be viewed together. <u>Palmer</u>, 560 F.3d at 970 (citation and quotation marks omitted); <u>Wilborn</u> 789 F.2d at 1331.

In the present case, the Court does not find the required exceptional circumstances. Even assuming Plaintiff is not well versed in the law and he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. The Court is faced with similar cases almost daily. Further, at this early stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits, and based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims. <u>Id.</u> Therefore, Plaintiff's request for the appointment of counsel should be denied.

#### 2.   Declaratory Relief

Plaintiff also seeks a declaration that his rights were violated. Because Plaintiff's claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims and should be dismissed. <u>Rhodes</u>, 408 F.3d at 565-66 n.8 (quotation marks omitted).

### 3.   **Injunctive Relief**

Finally, Plaintiff seeks the following forms of injunctive relief: an order placing CDCR in a receivership until the code of silence and prison employee gangs are eliminated; an order removing prison gang employees from office; an order prohibiting any legal defense for CDCR employees, including by the Attorney General's Office, until the code of silence and prison employee gangs are eradicated; an order prohibiting Defendants and their agents, co-workers, or employees from retaliating against or harassing Plaintiff and/or his witnesses; an order expunging documents; and an order releasing Plaintiff from prison.

For each form of relief sought in federal court, Plaintiff must establish standing. <u>Summers v. Earth Island Institute</u>, 555 U.S. 488, 493, 129 S.Ct. 1142 (2009) (citation omitted); <u>Mayfield v. United States</u>, 599 F.3d 964, 969 (9th Cir. 2010) (citation omitted).  This requires Plaintiff to show that he is under threat of suffering an injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. <u>Summers</u>, 555 U.S. at 493 (quotation marks and citation omitted); <u>Mayfield</u>, 599 F.3d at 969.

In addition, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

With the possible exception of the expungement of documents relating to Plaintiff's retaliation claim, Plaintiff does not have standing to obtain any of the injunctions he seeks in his amended complaint.  Plaintiff's claims arise out of past events at Corcoran for which damages are adequate; future abstract injury will not support a claim for injunctive relief; and none of the injunctions Plaintiff seeks are narrowly tailored to correct the violations at issue.  18 U.S.C. §

3626(a)(1)(A); <u>Summers</u>, 555 U.S. at 493; <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-05, 103 S.Ct. 1660 (1983); <u>Mayfield</u>, 599 F.3d at 969.  Therefore, the Court recommends that this action be limited to one for damages, with the exception of the possible expungement of documents relating to Plaintiff's retaliation claim.

**IV.   Conclusion and Recommendation**

Plaintiff's amended complaint states a First Amendment claim against Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, and Beer for retaliation; an Eighth Amendment claim against Defendants Zamora, Espinosa, Drew, Munoz, Olmedo, and Gray for excessive force and failure to intervene; an Eighth Amendment conditions-of-confinement claim against Defendants Zamora, Espinosa, Olmedo, Fields, White, Munoz, and Rousseau arising out of the exposure to a pepper spray drenched cell and the denial of adequate clothing for seven months; assault and battery claims against Defendants Zamora, Espinosa, and Jackson; negligence claims against Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, Beer, and Gray; and a Bane Act (section 52.1) claim against Defendants Garcia, Zamora, Espinosa, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, and Beer.

Plaintiff was previously given notice of the deficiencies in his claims and an opportunity to amend.  In as much as Plaintiff submitted a virtually identical amended complaint, further leave to amend is not warranted.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000); <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Accordingly, it is HEREBY RECOMMENDED that:

1.     This action proceed on Plaintiff's amended complaint, filed on March 23, 2012, as for damages and possible injunctive relief, limited to the expungement of documents relating to Plaintiff's retaliation claim, against:

    a.     Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, and Beer for retaliation, in violation of the First Amendment;

    b.     Defendants Zamora, Espinosa, Drew, Munoz, Olmedo, and Gray for

excessive force and failure to intervene, in violation of the Eighth Amendment;

    c.    Defendants Zamora, Espinosa, Olmedo, Fields, White, Munoz, and Rousseau for violation of the Eighth Amendment arising out of the exposure to a pepper spray drenched cell and the denial of adequate clothing for seven months;

    d.    Defendants Zamora, Espinosa, and Jackson for assault and battery;

    e.    Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, Beer, and Gray for negligence; and

    f.    Defendants Garcia, Zamora, Espinosa, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, and Beer for violation of the Bane Act (section 52.1);

2. Plaintiff's First Amendment retaliation claims against Defendants Casillas and Gray be dismissed, with prejudice, for failure to state a claim;

3. Plaintiff's Eighth Amendment claims based on the following conditions be dismissed, with prejudice, for failure to state a claim: the deprivation of Plaintiff's prescription eyeglasses and shoes for approximately eighteen hours; the deprivation of a towel and soap for approximately four days; the deprivation of toilet paper, a toothbrush, and tooth powder for approximately seven days; placement in dirty boxer shorts; placement in a holding cage for more than 4 ½ hours without food, water, a toilet, or medication; transfer to a cell without adequate lighting or ventilation; and the allowance of a shower two times a week rather than three times a week;

4. Plaintiff's Eighth Amendment medical care claim be dismissed, with prejudice, for failure to state a claim;

5. Plaintiff's due process claim arising out of the deprivation of his personal property be dismissed, with prejudice, for failure to state a claim;

6. Plaintiff's Bane Act claim against Defendant Jackson be dismissed, with prejudice, for failure to state claim;

///

7.    Plaintiff's claims based on violations of the California Penal Code and Title 15 regulations be dismissed, with prejudice, for failure to state a claim;

8.    Plaintiff's claim for declaratory and claims injunctive relief, except as to the expungement of documents relating to Plaintiff's retaliation claim, be dismissed for failure to state a claim;

9.    Plaintiff's request for the appointment of counsel be denied;

10.   The State of California and Defendants Cate, Lopez, Adams, and Casillas be dismissed from this action, with prejudice, based on Plaintiff's failure to state any claims against them; and

11.   (1) Defendant Cate be substituted with current CDCR Secretary Dr. Jeffrey Beard and Defendant Lopez be substituted with current Corcoran Acting Warden Connie Gipson, and (2) Plaintiff be allowed to proceed with an official capacity claim against Beard and Gipson, limited to his injunctive relief claim for the expungement of documents related to his retaliation claim.[8]

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the

///
///
///
///
///

---

[8] In the event that it is determined Plaintiff is not entitled to the injunction he seeks, his official capacity claim against Defendants Beard and Gipson will be dismissed.  Furthermore, the proper parties shall be substituted for Beard and Gipson in the event that one or both are replaced.  Official capacity claims against former state officials are not permissible.  Rounds v. Oregon State Bd. of Higher Educ., 166 F.3d 1032, 1036 n.2 (9th Cir. 1999).

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**    **January 22, 2013**                          /s/ Sheila K. Oberto
                                                UNITED STATES MAGISTRATE JUDGE