# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ, | Case No. 1:10-cv-01773-AWI-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING (1) PLAINTIFF'S MOTION TO STRIKE AND FOR SANCTIONS BE DENIED, (2) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART, (3) A LIMITED-ISSUE EVIDENTIARY HEARING BE SET, AND (4) PLAINTIFF'S MOTION FOR COUNSEL AT THE EVIDENTIARY HEARING BE DENIED |
| v. | |
| MATHEW CATE, et al., | |
| Defendants. | |
| | (Docs. 105, 109, and 119) |
| | OBJECTION DEADLINE: THIRTY DAYS RESPONSE DEADLINE: FIFTEEN DAYS |
| _____/ | |

## Findings and Recommendations on Defendants' Motion

### I.    Procedural History

Plaintiff Andrew R. Lopez ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 and California law on September 10, 2010.  This action is proceeding on Plaintiff's amended complaint, filed on March 23, 2012, against Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, Beer, Gray, Beard, and Gipson ("Defendants") for violating Plaintiff's rights under federal and state law.  Plaintiff's claims arise out of his past conditions of

confinement at California State Prison-Corcoran ("CSP-Corcoran") in Corcoran, California, where he remains incarcerated.  The action is proceeding as one for money damages, with the limited exception of an official capacity claim against Secretary Beard and Warden Gipson relating to the possible expungement of documents from Plaintiff's central file, which is tethered to Plaintiff's First Amendment retaliation claim.  (Doc. 31, Screening Findings and Recommendations, 20:2-4; Doc. 34, Screening Order, 3:16-18.)

On May 21, 2014, Defendants filed a motion for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies in compliance with 42 U.S.C. § 1997e(a) with respect to his federal claims, Fed. R. Civ. P. 56(c); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014), and his failure to timely file suit in compliance with the Government Claims Act with respect to his state law claims, Cal. Gov't Code § 945.6.  (Doc. 105.)  Plaintiff filed a motion to strike on June 12, 2014, and an opposition to Defendants' motion on July 3, 2014.[1]  (Docs. 109, 118.)  Defendants filed an opposition to Plaintiff's motion to strike on June 23, 2014, and Plaintiff filed a reply on July 7, 2014.  (Docs. 112, 119.)  Defendants filed a reply to Plaintiff's opposition to their motion for summary judgment on July 23, 2014, and the motions for summary judgment and to strike have been submitted on the record without oral argument pursuant to Local Rule 230(*l*).  (Doc. 132.)

## II.   **Discussion**

### A.   **Plaintiff's Motion to Strike**

Plaintiff moves to strike Defendants' motion for summary judgment on the ground that it represents an unfair tactical advantage over him and prejudices him in light of his pro se status.[2] The Court recommends the motion be denied for lack of merit.

---

[1] Plaintiff was provided with contemporaneous notice of the requirements for opposing a summary judgment motion for failure to exhaust administrative remedies. *Stratton v. Buck*, 697 F.3d 1004, 1008 (9th Cir. 2012); *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (Doc. 105.)

[2] Plaintiff's argument regarding the use of ECF page numbers is not addressed.  Plaintiff raised that issue in a motion filed on June 12, 2014, and the Court rejected his argument that he was prejudiced by the use of ECF citations and denied the motion on July 21, 2014.  (Docs. 110, 129.)  No basis for revisiting the issue is presented.

Defendants are entitled to file a motion seeking resolution in their favor based on Plaintiff's failure to exhaust; it is appropriate to bring such a motion early in the proceedings before the commencement of discovery; and following the decision in *Albino*, Defendants were required to re-file their motion as one for summary judgment rather than for dismissal under unenumerated Rule 12(b). *Albino*, 747 F.3d at 1168-71. The fact that the *Albino* decision was issued *after* Plaintiff opposed Defendants' motion to dismiss, which Plaintiff argues allowed them to benefit unfairly in moving for summary judgment because they knew what his opposition arguments were, was not within Defendants' control and is immaterial. Defendants are entitled to move for summary judgment for failure to exhaust, and Plaintiff's motion to strike the motion on grounds of unfairness and prejudice is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827 (1989).

Plaintiff's argument that the Court should strike Defendants' citations to district court cases involving pro se prisoners is also meritless. Defendants complied with Local Rule 133(i)(3)(ii) by serving Plaintiff with copies of the district court opinions they cited from Westlaw and nothing further was required. Plaintiff's attempt to analogize the prohibition against pro se litigants representing anyone other than themselves with the use of authority based on cases involving pro se litigants is unpersuasive. Civil rights cases filed by pro se prisoners are subject to publication in the Federal Supplement just like any other case, and the fact that some decisions are published on Westlaw or Lexis instead of the Federal Supplement does not render them inappropriate for citation. *See e.g.*, *Grenning v. Klemme*, 34 F.Supp.3d 1144 (E.D.Wash. 2014) (district court's ruling in section 1983 action filed by pro se prisoner published in Federal Reporter); *Nelson v. Biter*, 33 F.Supp.3d 1173 (C.D.Cal. 2014) (same in habeas case filed by pro se prisoner). Local Rule 133(i)(3)(ii), with which Defendants complied, remedies any arguable prejudice to pro se litigants arising from their inability to obtain copies of the opinions.

The crux of Plaintiff's argument is his disagreement with the district court decisions cited by Defendants, and he contends that because the prisoners proceeding pro se were taken advantage of by the defendants and/or the district courts, those decisions should not be subject to citation. However, the fact that a litigant or a court disagrees with other court decisions or another litigant's

1  arguments presents no legitimate ground for striking the case citations.  In any given case, both

2  sides make their best arguments and it is for the assigned judge to determine whether the authority

3  cited is persuasive.[3]  Defendants' reliance on four district court decisions available on Westlaw to

4  support their argument presents no deviation from standard legal practice and provides no basis for

5  striking the authority.

6      Accordingly, the Court recommends Plaintiff's motion to strike be denied.  The Court

7  further recommends that Plaintiff's motion for sanctions, set forth in his reply, be denied on the

8  ground that Plaintiff makes no showing sufficient to support an award of sanctions.[4]  *See e.g.*,

9  *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447 (1990) (Rule 11); *Roadway*

10 *Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455 (1980) (inherent authority); *Braunstein*

11 *v. Arizona Dept. of Transp.*, 683 F.3d 1177, 1189 (9th Cir. 2012) (28 U.S.C. § 1927); *Gomez v.*

12 *Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001) (inherent authority); *United Nat. Ins. Co. v. R&R*

13 *Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) (Rule 11).

14      **B.    Defendants' Motion for Summary Judgment on Federal Claims**

15          **1.    Legal Standard**

16              **a.    Statutory Exhaustion Requirement**

17      Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with

18 respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

19 confined in any jail, prison, or other correctional facility until such administrative remedies as are

20 available are exhausted."  42 U.S.C. § 1997e(a).  This statutory exhaustion requirement applies to

21 all inmate suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983 (2002)

22 (quotation marks omitted), regardless of the relief sought by the prisoner or the relief offered by

23 the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and unexhausted claims

24 may not be brought to court, *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910 (2007) (citing

25 *Porter*, 534 U.S. at 524).

26

27 _____

    [3] Decisions by other district courts are not binding on this court.

28 [4] *See e.g.*, Doc. 126, Order, 2:18-26.

1    The failure to exhaust is an affirmative defense, and the defendants bear the burden of

2   raising and proving the absence of exhaustion.  *Jones*, 549 U.S. at 216; *Albino*, 747 F.3d at 1166.

3   "In the rare event that a failure to exhaust is clear from the face of the complaint, a defendant may

4   move for dismissal under Rule 12(b)(6)."  *Albino*, 747 F.3d at 1166.  Otherwise, the defendants

5   must produce evidence proving the failure to exhaust, and they are entitled to summary judgment

6   under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff,

7   shows he failed to exhaust.  *Id.*

8    Defendants must first prove that there was an available administrative remedy and that

9   Plaintiff did not exhaust that available remedy.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th

10   Cir. 2015) (citing *Albino*, 747 F.3d at 1172) (quotation marks omitted).  The burden then shifts to

11   Plaintiff to show that something in his particular case made the existing and generally available

12   administrative remedies effectively unavailable to him.  *Williams*, 775 F.3d at 1191 (citing *Albino*,

13   747 F.3d at 1172) (quotation marks omitted).  The ultimate burden of proof on the issue of

14   exhaustion remains with Defendants.  *Id.* (quotation marks omitted).

### b.    <u>Summary Judgment Standard</u>

16    Any party may move for summary judgment, and the Court shall grant summary

17   judgment if the movant shows that there is no genuine dispute as to any material fact and the

18   movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted);

19   *Albino*, 747 F.3d at 1166; *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).

20   Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1)

21   citing to particular parts of materials in the record, including but not limited to depositions,

22   documents, declarations, or discovery; or (2) showing that the materials cited do not establish the

23   presence or absence of a genuine dispute or that the opposing party cannot produce admissible

24   evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may

25   consider other materials in the record not cited to by the parties, although it is not required to do

26   so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031

27   (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

28

As set forth above, the defendants bear the burden of proof in moving for summary judgment for failure to exhaust, *Albino*, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," *id.* at 1172.  If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*  "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

## 2.   Summary of CDCR's Generally Available Inmate Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare, Cal. Code Regs., tit. 15, § 3084.1, and compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims, *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).  The Title 15 regulations governing CDCR's inmate appeals process were amended in 2011, but Plaintiff's claims arise from events which occurred during 2008 and 2009 and the relevant regulations are those which were in effect during that time period.  Therefore, the citations to Title 15 set forth herein are those pre-amendment regulations in effect prior to December 13, 2010.

During the relevant time period, the appeals process was initiated by submitting a CDC Form 602 describing "the problem and action requested," Cal. Code Regs., tit. 15, § 3084.2(a) (West 2009), and appeal had to be submitted "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision," tit. 15, § 3084.6(c). Up to four levels of appeal could be involved, including an informal level and the first formal level, second formal level, and third formal level, which was also known as the Director's Level. Tit. 15, § 3084.5.  However, contrary to Defendants' argument, inmates are not necessarily

required to pursue their appeals through the third and final level of appeal for courts to find exhaustion occurred.  *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010); *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).  "An inmate has no obligation to appeal from a grant of relief, or a partial grant of relief that satisfies him, in order to exhaust his administrative remedies."  *Harvey*, 605 F.3d at 685.  "Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised."  *Harvey*, 605 F.3d at 685.  As a result, the exhaustion inquiry is fact-specific and requires consideration of the appeal and the responses thereto.  *Harvey*, 605 F.3d at 685; *Brown*, 422 F.3d at 935; *see also Hash v. Lee*, No. C 08-3729 MMC (PR), 2014 WL 2986486, at *12 (N.D.Cal. Jul. 2, 2014).

### 3.   Plaintiff's Claims Represented to be Unexhausted[5,6]

Plaintiff is proceeding on the following federal claims: retaliation in violation of the First Amendment, excessive force in violation of the Eighth Amendment, and placement in a pepper spray contaminated cell and the denial of adequate clothing, linens, and exercise, in violation of the Eighth Amendment.  Defendants do not move for judgment on all of Plaintiff's claims, but they identify ten allegations or events they argue were not exhausted, entitling them to judgment.[7] (Doc. 105-1, Motion, 9:14-10:2.)   The Court must determine if Plaintiff filed any appeals concerning these events; if so, whether the appeals sufficed; and if not, why not.  *Williams*, 775 F.3d at 1191-92.  To the extent there are disputed issues of fact precluding a determination on the current record, Defendants' motion shall be denied and an evidentiary hearing will be set.

---

[5] Defendants' motion to dismiss was denied, without prejudice, in light of *Albino*, and in moving for summary judgment, Defendants cited to portions of their motion to dismiss and Plaintiff's oppositions thereto, which included an opposition and three supplements.  (Docs. 59, 66, 68, 69, 87.)   In opposing the motion for summary judgment, Plaintiff also referred back to these prior filings.  The Court has considered these filings and the parties should not construe the absence of specific citations to multiple parts of the record as an indication the Court overlooked the underlying record.

[6] Contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence.  *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).  Plaintiff's amended complaint is verified.  Plaintiff's opposition briefs are not verified but they are supported in part by Plaintiff's declarations.

[7] The Court addresses all ten allegations or events identified by Defendants but it does so in fewer than ten separate categories, as it does not consider the allegations or events to comprise distinctly separate claims for the purpose of exhaustion.

*Cortinas v. Gipson*, No. 1:13-cv-01229-AWI-SAB (PC), 2015 WL 648228, at *1 (E.D.Cal. Feb. 13, 2015) (citing *Albino*, 747 F.3d at 1169-71).

a.     **State Court Decision Regarding Habeas Petition**

As an initial matter, the Court addresses Plaintiff's argument regarding the decision rendered by the Kings County Superior Court, as it is a thread woven throughout Plaintiff's arguments in the multiple opposition briefs considered by the Court.  Plaintiff filed a petition for writ of habeas corpus in Kings County Superior Court; and on June 18, 2009, the superior court found that Plaintiff stated a prima facie case that CSP-Corcoran was not processing his appeals in accordance with statutes, regulations and policies, and it ordered the Attorney General to show cause why Plaintiff was not entitled to appropriate relief.  (Doc. 21, Amend. Comp., Ex. A.)  On March 26, 2010, following an evidentiary hearing, the superior court issued an order granting in part and denying in part Plaintiff's petition.[8]   (Doc. 105-2, Req. for Jud. Not., Ex. A.)  The superior court determined that CSP-Corcoran complied with applicable statutes, regulations and DOM provisions as to some of Plaintiff's inmate appeals but failed to comply as to other appeals, resulting in an order requiring CSP-Corcoran to process five inmate appeals.  (*Id.*)

However, the superior court's order is of no assistance to Plaintiff in this case, despite his arguments to the contrary.  The appeals at issue in Plaintiff's habeas petition predated the events in this action and therefore, the determination that some appeals were not processed does not impact the events and inmate appeals at issue in this action.  *See Gonzales v. California Department of Corrections and Rehabilitation*, 739 F.3d 1226, 1232-33 (9th Cir. 2014) (discussing claim and issue preclusive effect of state habeas decisions).  Furthermore, the superior court did not make any broader findings of fact regarding CSP-Corcoran's appeals process, precluding any argument that the decision supports a finding in this case that utilization of the process was "'obviously futile'" or that CSP-Corcoran lacked an effectively available appeals process.  *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172); *see also Porter*, 534 U.S. at 524 ("All 'available'

---

[8] Defendants' request for judicial notice of the superior court decision is granted.  Fed. R. Evid. 201; *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004).  (Doc. 105-2.)

1   remedies must now be exhausted; those remedies need not meet federal standards, nor must they

2   be 'plain, speedy, and effective.'") (quoting *Booth*, 532 U.S. at 739 n.5).

3                       **b.**   **Excessive Force Claim Against Defendant Gray**

4       Turning to Plaintiff's claims, Defendants first argue that Plaintiff failed to exhaust his

5   allegation that Defendant Gray ignored his complaints of pain and his request to have his

6   handcuffs removed.  (Doc. 105-1, Motion for Summary Judgment ("MSJ"), 3:14-15.)  However,

7   Plaintiff is not proceeding on a medical care claim, and his allegations regarding the tight

8   handcuffs are part of his claim that he was subjected to excessive physical force on October 30,

9   2008.

10      The evidence produced by the parties shows that Plaintiff submitted inmate appeal log

11   number COR-08-05137/IAB 0817320 on November 7, 2008, and it was denied on April 30, 2009,

12   at the third and final level of review.  (Doc. 59-3, Motion to Dismiss ("MTD"), Ex. D, pp. 23-33.)

13   An appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for

14   which the prisoner seeks redress."  *Sapp*, 623 F.3d at 822-23.  "[T]he prisoner need only provide

15   the level of detail required by the prison's regulations," and during the relevant time period, "[t]he

16   California regulations require[d] only that an inmate describe the problem and the action

17   requested."[9]  *Sapp*, 623 F.3d at 824 (citations and internal quotation marks omitted).  While the

18   standard provides a low floor, it advances the primary purpose of a grievance: to notify the prison

19   of a problem.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (quotation marks and

20   citations omitted); *accord Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014); *Akhtar v.*

21   *Mesa*, 698 F.3d 1202, 1211 (9th Cir. 2012).  Thus, Plaintiff's appeal sufficed if it alerted the

22   prison to the nature of the wrong for which redress is now sought.  *Sapp*, 623 F.3d at 824

23   (quotation marks omitted); *accord Akhtar*, 698 F.3d at 1211.

24      Here, the appeal grieved the incident of excessive force at issue in this action, including

25   notice that Plaintiff was subjected to overly tight handcuffs.  *Sapp*, 623 F.3d at 824.  (Doc. 59-3,

26   MTD, Ex. D, pp. 27.)  Plaintiff was not required to identify Defendant Gray by name or to

27

28   [9] The regulations now in effect require inmates to list all involved staff by name and describe their involvement.  Cal. Code Regs., tit. 15, §3084.2(a)(3) (West 2015).

describe her specific involvement with respect to ignoring his complaints about overly tight handcuffs, tit. 15, § 3084.2(a), and his grievance regarding the cell extraction and tight handcuffs sufficed to exhaust his excessive force claim, *Sapp*, 623 F.3d at 824.

Accordingly, the Court recommends Defendants' motion for judgment on the claim against Defendant Gray be denied on the ground that Plaintiff exhausted his Eighth Amendment excessive force claim.

### c.   Cold Cell and Denial of Adequate Clothing, Linens, and Exercise

Plaintiff alleges that for seven months, he was denied adequate clothing and linens while being held in a cold cell, and he was denied exercise.  Defendants treat separately Plaintiff's allegation that he was subjected to cold cell conditions, denied yard time, and required to attend appointments in his underwear, and his allegation that Defendants Fields, White, and Munoz failed to respond to his complaint that he was being denied linens and clothing.  However, this argument excessively parses Plaintiff's legal claim arising from being subjected to cold conditions without adequate clothing and linen, for exhaustion purposes.  As previously stated, Plaintiff was not required to name the involved staff members or specifically describe their involvement.  Tit. 15, § 3084.2(a).  Thus, the issue is whether Plaintiff filed an appeal which sufficed to place prison officials on notice that he was housed in an overly cold cell and deprived of adequate clothing, linens, and exercise.  *Sapp*, 623 F.3d at 824.

### 1)   Cold Cell and Lack of Linens and Clothing

The evidence produced shows that Plaintiff submitted inmate appeal log number COR-08-05161/IAB 0817939 on November 12, 2008.  (Doc. 59-3, MTD, Ex. E, pp. 35-53.)  In the initial appeal, Plaintiff complained about the "freezing" cold temperature in his cell and inadequate clothing and linens.  (*Id.*, pp. 37-40.)  The appeal was denied at the third and final level of review on April, 14, 2009, and it suffices to exhaust Plaintiff's claim regarding lack of adequate clothing and linens while housed in a cold cell, as it placed prison officials on notice of those conditions at the initial level of review.[10]  *Sapp*, 623 F.3d at 824.  Plaintiff alleges that he was subjected to these

---

[10] Plaintiff's allegation concerning attending medical appointments in his underwear relates to the lack of adequate clothing.

1   conditions for seven months, and he is not required to keep repeatedly grieving the same issues.

2   Therefore, Plaintiff's claim arising out of inadequate clothing and linens while housed in a cold

3   cell is exhausted and the Court recommends Defendants' motion for summary judgment be

4   denied.

**2)      Lack of Adequate Exercise**

5

6       The appeal grieving the cold temperature and inadequate clothing and linens does not

7   mention lack of exercise, however.  Plaintiff advances a number of arguments in support of his

8   position that the issue was exhausted.  For the reasons set forth below, the Court finds that

9   Plaintiff did not properly exhaust his claim arising from the denial of adequate exercise and it

10  recommends that Defendants' motion for summary judgment be granted as to that claim.

**a)      Space Limitation**

11

12      Plaintiff contends that the regulations limited his ability to include all the facts at issue.

13  (Doc. 68, Opp. to MTD, 4:5-6 & Lopez Dec., ¶4; Doc. 87, 3rd Supp. Opp. to MTD, 7:7:11-12.)  As

14  Plaintiff represents, the regulation in effect at that time limited inmates to one attached page, front

15  and back.  Tit. 15, § 3084.2(a)(1).  Plaintiff's argument that he was unable to place prison officials

16  on notice in his initial appeal that he was being denied an adequate opportunity to exercise is

17  belied by record, however.  (Doc. 59-3, MTD, Ex. E, pp. 37-40.)  Plaintiff included notice of a

18  freezing cold cell and the denial of clothing on the first page of his appeal, and there was ample

19  space on the appeal form for him to have included one or two words regarding exercise.  There

20  was also ample space on his authorized attachment to include one or two words regarding

21  inadequate exercise, and his argument to the contrary is untenable.[11]

**b)      Personal Interview**

22

23      Plaintiff also argues that he raised numerous issues, including inadequate exercise, during

24  his personal interview, but the interviewer wrongly failed to document all of the issues he raised in

25  the interview.  (Doc. 68, Opp. to MTD, 18:21 & Lopez Dec., ¶¶4, 5; Doc. 118, Opp. to MSJ, PUF

26  9, p. 47-48 & Ex. B, DOM § 54100.14.)   However, "[p]roper exhaustion[, which] demands

27
28
---
[11] The Court summarily rejects Plaintiff's argument that his inability to adequately exercise is reasonably inferable from his lack of adequate clothing.  Plaintiff is obligated to put enough information in his inmate appeal to place prison officials on notice of the issues he is grieving. Tit. 15, § 3084.2(a); *Sapp*, 623 F.3d at 824.

compliance with an agency's deadlines and other critical procedural rules . . . ." is required, *Ngo*, 548 U.S. at 90, and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal," *id.* at 83-84.  The regulations do not provide any support for Plaintiff's argument that inmates are entitled to add appeal issues in the personal interview. Tit. 15, § 3084.5(f).  To the contrary, the regulation required inmates to describe the problem in the appeal form when initiating the appeal, at which time inmates could include one attached page, front and back.  Tit. 15, § 3084.2(a).  Although a personal interview is to be conducted at the first level of review, the Departmental Operations Manual specifies that the purpose of the interview is to allow the inmate to *clarify* the issues and the reviewer to ask questions.  (DOM § 54100.14, Ex. B, Doc. 118).  Thus, Plaintiff's argument that the rules entitled him to expand his appeal to include new issues during the post-appeal submission interview lacks any support.

**c)**     <u>**Third Level Attachment to Appeal Dated November 12, 2008**</u>

Next, Plaintiff argues that Defendants failed to provide a complete copy of appeal log number CSPC-6-08-05161, dated November 12, 2008.  Plaintiff produces a separate page entitled "Director's Level (Reply to Institutional Level)," which is an attached statement Plaintiff submitted with his appeal to the third and final level of review.  (Doc. 68, Opp. to MTD, 4:15-17 & Ex. A.)  However, the regulations did not provide that inmates could expand their appeal issues at a later level of review by including a new attachment. Tit. 15, §§ 3084.2(a)(1), 3084.5(d).  To the contrary, the appeal form included a space for Plaintiff to include data or reasons for seeking a Director's Level review, and the regulation entitling inmates to attach a separate sheet applied only to the initial appeal submission and was limited to sections A and B, which pertain to the problem description and relief sections completed at the time of initial submission.  Tit. 15, § 3084.2(a)(1).  While prison officials may have had discretion to expand their appeal decision to include newly raised issues, in the absence of evidence in the form of an appeal response demonstrating that they actually did so, an inmate's subsequent inclusion of a new issue at the third level of review does not constitute "proper exhaustion" in compliance with the applicable regulations.

1

**d)** **Screened Out Appeal Dated March 1, 2009**

2    Finally, Plaintiff argues that his appeal dated March 1, 2009, which was screened out,

3 raised the issue of inadequate exercise.  (Doc. 69, 2nd Supp. Opp., 4:1-4 & Lopez Dec., ¶5.)

4 However, Plaintiff's position is not supported by the record.  Plaintiff submitted an appeal dated

5 March 1, 2009, and it included an attachment, neither of which grieved inadequate exercise.  (*Id.*,

6 Ex. E, p. 21-22.)  Plaintiff attests that "Exhibit A [to the appeal] has an [sic] Corcoran Appeals

7 date stamp of March 19, 2009 directly over where I give notice of the October 30, 2008

8 confiscation of my clothing, how it is 'adversely affecting my 8th Amendment right to outdoor

9 exercise….'" (*Id.*, Lopez Dec., ¶5 & Ex. E, p. 25.)

10    However, Exhibit A is a letter to the Classification Committee dated February 26, 2009.

11 (*Id.*, Ex. E, p. 25.)   While Plaintiff complained about inadequate exercise in his letter to the

12 classification committee and he sent that letter to the appeals office, his contention that the letter

13 was part of his appeal and was received by the appeals office on March 19, 2009, is refuted by the

14 record.  Plaintiff's appeal bears four appeals office date stamps, with the fourth and final stamp

15 bearing the date of April 10, 2009.  (*Id.*, Ex. E, p. 21.)  The letter to the classification committee

16 complaining about lack of exercise bears an appeals office date stamp of April 10, 2009.  (*Id.*, Ex.

17 E, p. 25.)   Thus, Plaintiff's representation that the letter was part of his original appeal is

18 contradicted by the evidence, even if the fact that it was a letter to the classification committee and

19 not an appeal or an appeal attachment was to be overlooked.

20    Plaintiff is required to comply with the procedural rules and he did not complain about the

21 lack of adequate exercise in his appeal dated March 1, 2009.  Plaintiff's later inclusion of a letter

22 to the classification committee as an exhibit to the appeal does not remedy his failure to grieve

23 inadequate exercise in his initial inmate appeal, as he was required to do.  Accordingly, the Court

24 finds that the appeal dated March 1, 2009, did not suffice to exhaust Plaintiff's exercise claim,

25 regardless of whether the appeal was screened out in error and should be considered exhausted.[12]

26 *Sapp*, 623 F.3d at 823-24.

27
[12] The appeal was screened out because Plaintiff failed to attach a CDC form 128-G.  (Doc. 69, Supp. Opp. 2, Ex. E,

28 p. 28.)  However, after receiving the screening notice, Plaintiff placed the appeals office on notice that he could not attach the 128-G form because he was never given a copy of it.  *See Sapp*, 623 F.3d at 821-26 (appeals which are

### d.  Retaliation Claims

#### 1)  Property Confiscation

Defendants argue they are entitled to summary judgment for failure to exhaust on Plaintiff's property deprivation claim, arising from events between December 10, 2008, and June 8, 2009.  Plaintiff's due process claims arising out of his property deprivation were dismissed for failure to state a claim, but he also alleged retaliatory deprivation of his personal property over a seven month period, approximately.  (Doc. 31, Screening Findings and Recommendations, 13:24-14:2; Doc. 34, Screening Order, 3:10-11.)

Appeal number COR-08-05137/IAB 0817320, submitted on November 7, 2008, and denied at the third and final level of review on April 30, 2009, grieved the use of force against Plaintiff on October 30, 2008.  (Doc. 59-3, Ex. D.)  It also placed prison officials on notice that Plaintiff was an active litigator and staff retaliated against him as a result.  (*Id.*, Ex. D, pp. 25-28.)  In part, Plaintiff stated in the appeal that his property was taken and he was warned he would not get his property back "for a long time."  (*Id.*, p. 28.)  Given the ongoing nature of the events underlying Plaintiff's claim, the Court finds that this appeal sufficed to exhaust Plaintiff's claim that his was denied his property over a months-long period in retaliation against him for his jailhouse lawyering activities.  *Sapp*, 623 F.3d at 823-24.  The appeal placed prison officials on notice of the conduct underlying Plaintiff's retaliation claim, including retaliatory motive, and nothing further was required.  *Wilkerson*, 772 F.3d at 839 ("'All the grievance need do is object intelligibly to some asserted shortcoming.'") (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)).

#### 2)  Retaliatory CDC 128-B Chronos

Plaintiff alleges that on November 10, 2008, Defendants Rousseau and Martinez each placed a CDC 128-B informational chrono in his file which contained false, misleading information and which led to the deprivation of his property.  (Doc. 21, Amend. Comp., ¶43.)  The chrono signed by Defendant Rousseau stated that Plaintiff was placed on property restriction

---

properly screened out are unexhausted but an improper screening decision renders appeals process effectively unavailable).  (*Id.*, Lopez Dec., ¶5 & Ex. E, p. 31.)

status for thirty days for covering up his cell light and windows, but Plaintiff alleges that Rousseau and Martinez issued the chronos in retaliation against him for complaining to Defendants Fields, White, and Munoz on November 7, 2008, regarding the denial of property access without due process, clothing, linens, and yard time, and his cold cell.  (*Id.*, ¶43 & Ex. E, court record p. 37.)

Plaintiff also alleges that in retaliation against him for continuing to complain about inadequate clothing and the disappearance of his laundry bag, Defendant Martinez placed a CDC 128-B informational chrono in his file on June 23, 2009, which falsely stated Plaintiff made a rope out of a sheet and assessed the cost of the sheet against Plaintiff, without due process.  (*Id.*, ¶47.)

Appeal log number COR-08-05161/IAB 0817939, filed on November 12, 2008, and exhausted on April 14, 2009, addressed the issuance of the CDC 128-B chrono dated November 10, 2008, but the appeal did not allege that the chrono was issued in retaliation against Plaintiff for complaining.   (Doc. 59-3, Motion to Dismiss, Def. Ex. E, court record pp. 35-53.)   To the contrary, Plaintiff concedes committing the act underlying the CDC 128-B.  (*Id.*, p. 43.)  In the appeal, Plaintiff complained of the abuse of authority, the lack of due process, and the absence of a legitimate nexus between the act of covering a cell's door, window, and light and the restriction of clothing, personal food, and hygiene items.  (*Id.*)   This appeal does not suffice to exhaust Plaintiff's claim that he was issued a retaliatory CDC 128-B on November 10, 2008, because the appeal does not set contain any facts that would place prison official on notice of that claim.  *Sapp*, 623 F.3d at 824.

With respect to the allegedly false chrono placed in his file by Defendant Martinez on June 23, 2009, Plaintiff fails to produce any evidence specifically showing that he exhausted an appeal on that issue or that the remedy process was rendered unavailable as to an appeal of that issue. *Williams*, 775 F.3d at 1191-92.  Plaintiff's broad arguments regarding prison officials' failure to comply with the rules and regarding the disappearance of appeals submitted to the locked appeals box do not suffice to demonstrate that (1) Plaintiff submitted a timely appeal adequately grieving the retaliatory chrono of June 23, 2009, in compliance with the applicable procedural rules, and (2) the process was rendered effectively unavailable with respect to this appeal.  *Id.*  Accordingly, the

Court finds that Plaintiff's retaliation claims arising out of the chronos issued November 10, 2008, and June 23, 2009, were not exhausted and Defendants are entitled to judgment as to those claims.

### 3)   **Retaliatory Isolation of Plaintiff from Allies and Transfer to Building Three**[13]

#### a)   **June 22, 2009, and July 24, 2009**

Plaintiff alleges that because he no longer associates with gangs, he has been targeted by gangs for assault or worse since 2008. (Doc. 21, Amend. Comp., ¶48.) As a result, most 4B inmates were unwilling to assist or support Plaintiff, but inmates Jose Avina, Ruben Martinez, Trinidad Fernandez, and Art Martinez were willing to help and support him. (*Id.*, ¶¶48, 49.) On March 21, 2009, Defendant Garcia threatened inmate Avina with harassment because Avina was assisting Plaintiff; and on July 22, 2009, Defendant Garcia said he was transferring Plaintiff. (*Id.*, ¶¶50, 56.) After initially hesitating when questioned why, Defendant Garcia said it was to put a "validated" in there. (*Id.*, ¶56.) When Plaintiff said he was validated, Defendant Garcia appeared angry and walked away. (*Id.*) Plaintiff was aware of Defendant Garcia's previous threat to inmate Avina and he interpreted this event as evidence he was being removed to separate him from his witnesses. (*Id.*)

Subsequently, on July 24, 2009, the law librarian approved a request for legal assistance between Plaintiff and inmate Avina. (*Id.*, ¶57.) The request form was forwarded to Defendant Beer to evaluate whether the two could be housed together in the same cell or section. (*Id.*) Denial of the request required the issuance of a CDC 128-B form stating the reason for the denial and the distribution of copies to the law librarian, the facility captain, Plaintiff, and inmate Avina. (*Id.*) Defendant Beer failed to comply with these regulations and he avoided the law librarian's phones calls. (*Id.*, ¶58.) Plaintiff alleged that he submitted an inmate appeal but it was never returned. (*Id.*)

---

[13] Plaintiff alleges that Defendant Beer had been the housing unit sergeant for 4B-3 but in or around July 2009, he became the housing unit sergeant for 4B-4, where Plaintiff was housed. While in 4B-3, Defendant Beer formed strong relationships with the validated gang associates housed there and engaged in "deals" with them. In addition, various prison gang leaders were housed in 4B-3R, which is where Plaintiff alleges Defendant Beer had him transferred in September 2009, allegedly in retaliation against him and in an effort to isolate him from his witnesses and inmates who were willing to help him.

In support of his opposition, Plaintiff submitted a declaration attesting that he submitted inmate appeals regarding the retaliation claims summarized in this section by utilizing the housing unit's locked appeals box, but they were never returned.  (Doc. 68, Opp., Lopez Dec., ¶8.)  Plaintiff also attested that contrary to policy, the housing unit sergeants have keys to the appeals box and he has experienced numerous instances of appeals mishandling or loss by housing unit sergeants.  (Doc. 68, Opp., Lopez Dec., ¶9; Doc. 87, 3rd Supp. Opp., Ex. 1.)   Further, Plaintiff explained that Corcoran has a written policy forbidding inmates from copying appeals, and as a result, he lacks copies of his submitted appeals with the exception of a few appeals he managed to get copied by slipping them in with other paperwork.  (Doc. 68, Opp., ¶11; Doc. 118, Opp. to MSJ, Ex. F, p. 99.)

The Court finds that Plaintiff has produced sufficient evidence to raise a factual dispute regarding missing appeals relating to the events of June 22, 2009, and June 24, 2009.  *Williams*, 775 F.3d at 1191-92.  Specifically, Plaintiff described submitting appeals in compliance with the proper procedure which addressed these events now at issue in this suit; and he has submitted evidence showing that housing unit sergeants had keys to the appeals box and collected the appeals, contrary to written policy, and that Corcoran had a policy which precluded him from making photocopies of the appeals he submitted.  *Id.*  Thus, the Court's ability to make a final determination regarding whether Plaintiff properly filed appeals grieving these issues but the remedy process was rendered unavailable through the loss or theft of his properly submitted appeals is dependent upon an evidentiary hearing.  *Williams*, 775 F.3d at 1192; *Albino*, 747 F.3d at 1169-71.

**b)**   **September 30, 2009**

On September 30, 2009, Defendant Beer allegedly had Plaintiff removed from his cell in 4B-4R and attempted to assign him a cellmate who was a member of a gang that had a hit out on him.   After Plaintiff refused the incompatible cellmate, Defendant had Plaintiff's property confiscated, he placed the new inmate in Plaintiff's cell, and he moved Plaintiff to 4B-3B, in retaliation against him for filing grievances and lawsuits.  Plaintiff alleged that on October 6, 2009, he submitted an appeal concerning the events of September 30, 2009, but the appeal was

never returned; and that in November 2009, he submitted another appeal with a copy of the October 6 appeal and requested a response but that appeal was not returned either.  (Amend. Comp., ¶64.)

Defendants argue that although Plaintiff produced a copy of an inmate appeal dated October 6, 2009, in which he grieved the actions of Defendant Beer on September 30, 2009, the appeal was not exhausted through the third level of review, and Plaintiff failed to show he submitted the appeal to the first, second, and third levels of review or that he was thwarted from doing so.  Defendants also argue that although Plaintiff previously contended that prison policy prevents inmates from copying their appeals, he failed to produce the policy and his contention is belied by his possession of a copy of the October 6, 2009, appeal.  In addition, Defendants argue that Plaintiff is aware inmates can mail appeals through the U.S. Postal Service and he failed to show that he attempted to do so.

The allegations in Plaintiff's amended complaint, which Plaintiff cites in his oppositions, are verified, however, and they constitute evidence.  Further, in his first supplemental opposition to Defendants' motion to dismiss, Plaintiff provided a copy of the October 6 appeal and attested that it is a copy of the appeal he described in paragraph 64 of his amended complaint.  (Doc. 66, 1st Supp. Opp., Ex. A, Lopez Dec., ¶2, & Ex. B.)  Plaintiff attested that he submitted the appeal for processing by placing it in the appeals box located in Facility 4B, Building 3 Right building 3 right, and that he located the copy he provided when he went through his stored legal property. (Lopez Dec., ¶2.)  Plaintiff also attested that an assigned S & E (Search and Escort) officer is supposed to collect the appeals from the locked appeals box and deliver them to the captain, but building sergeants are being allowed to retrieve the appeals and they fail to document or forward them, which is an ongoing and corrupt practice.  (*Id.*, ¶3.)  Finally, Plaintiff produced evidence of CSP-Corcoran's policy forbidding the photocopying of appeals, which supports his testimony on that issue.  (Doc. 118, Opp., Ex. F.)

Review of the appeal copy dated October 6, 2009, shows that it would suffice to exhaust Plaintiff's claim arising from the events of September 30, 2009.  *Sapp*, 623 F.3d at 824.  The appeal was neither officially logged nor addressed by prison officials, however, and the next step

18

requires the Court to determine whether Plaintiff failed to comply with the rules or whether the administrative remedy process was rendered effectively unavailable. *Williams*, 775 F.3d at 1191-92; *Sapp*, 623 F.3d at 822-23.  Plaintiff has produced evidence that he submitted the appeal to the locked appeals box, per procedure, but that prison officials routinely disregarded the procedure and buildings sergeants – a position Defendant Beer held – retrieved the appeals.  Plaintiff's appeal received no response and he produced evidence that he tried a second time to submit the appeal, without success.  This evidence is sufficient to raise a disputed issue of fact regarding whether the administrative remedy process was rendered effectively unavailable through the loss or destruction of Plaintiff's appeal by prison staff. *Williams*, 775 F.3d at 1191-92; *Sapp*, 623 F.3d at 822-23.

In recognition of the fact that exhaustion requirements are designed to deal with parties who do not want to exhaust, "proper exhaustion" of the administrative remedies is required, *Ngo*, 548 U.S. at 90-91 (quotation marks omitted), but the procedural rules apply to prison officials as well.  As long as Plaintiff complied with the critical procedural rules, which he attests he did, he is not required to take additional steps to ensure that his appeal reaches its destination.  Thus, Defendants' argument that Plaintiff could have submitted his appeal via the U.S. Postal Service is rejected and the Court recommends their motion for summary judgment be denied, pending an evidentiary hearing.

### 4.   Counsel for Evidentiary Hearing

Plaintiff objects to an evidentiary hearing in this case unless he is appointed counsel. Plaintiff does not have a constitutional right to the appointment of counsel in this action. *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009); *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).  The Court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1), but it will do so only if exceptional circumstances exist. *Palmer*, 560 F.3d at 970; *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).  In making this determination, the Court must evaluate the likelihood of success on the merits and the ability of Plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. *Palmer*, 560 F.3d at 970 (citation and quotation marks omitted); *Wilborn*, 789 F.2d at 1331.  Neither consideration is

dispositive and they must be viewed together. *Palmer*, 560 F.3d at 970 (citation and quotation marks omitted); *Wilborn* 789 F.2d at 1331.

In the present case, the Court does not find the required exceptional circumstances. Even if it is assumed that Plaintiff is not well versed in the law and that he has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. The Court is faced with similar cases almost daily. Further, at this stage in the proceedings, the Court cannot make a determination that Plaintiff is likely to succeed on the merits, and based on a review of the record in this case, the Court does not find that Plaintiff cannot adequately articulate his claims. *Palmer*, 560 F.3d at 970.

While the Court recognizes that Plaintiff is at a disadvantage due to his pro se status and his incarceration, the test is not whether Plaintiff would benefit from the appointment of counsel. *See Wilborn*, 789 F.2d at 1331 ("Most actions require development of further facts during litigation and a pro se litigant will seldom be in a position to investigate easily the facts necessary to support the case.") The test is whether exceptional circumstances exist and here, they do not. Therefore, Plaintiff's request for counsel to represent him during the evidentiary hearing should be denied.

### C. Defendants' Motion for Summary Judgment on State Law Claims[14]

#### 1. Government Claims Act[15]

California's Government Claims Act requires that a tort claim against a public entity or its employees for money or damages be presented to the California Victim Compensation and Government Claims Board ("VCGCB" or "Board") no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action."

---

[14] Plaintiff is pursuing claims for assault, battery, negligence, and violation of the Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1).

[15] The Government Claims Act was formerly known as the California Tort Claims Act. *City of Stockton v. Superior Court*, 42 Cal.4th 730, 741-42 (Cal. 2007) (adopting the practice of using Government Claims Act rather than California Tort Claims Act).

1  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 209 (Cal. 2007) (citations omitted); *DiCampli-*

2  *Mintz v. Cnty. of Santa Clara*, 55 Cal.4th 983, 990, 289 P.3d 884, 888 (Cal. 2012); *State v.*

3  *Superior Court of Kings Cnty. (Bodde)*, 32 Cal.4th 1234, 1239 (Cal. 2004); *Mabe v. San*

4  *Bernardino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001); *Mangold v.*

5  *California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).   Suit must then be

6  commenced not later than six months after the date the written notice was deposited in the mail,

7  Cal. Gov't Code § 945.6(a)(1) (quotation marks omitted); *Clarke v. Upton*, 703 F.Supp.2d 1037,

8  1043 (E.D.Cal. 2010); *Baines Pickwick Ltd. v. City of Los Angeles*, 72 Cal.App.4th 298, 303 (Cal.

9  Ct. App. 1999), and "[t]he deadline . . . is a true statute of limitations defining the time in which,

10  after a claim presented to the government has been rejected or deemed rejected, the plaintiff must

11  file a complaint alleging a cause of action based on the facts set out in the denied claim," *Shirk*, 42

12  Cal.4th at 209 (citations omitted).

13  ## 2.   VCGCB #G581658

14   There is no dispute that between October 30, 2008, and September 30, 2010, Plaintiff filed

15  only one claim with the VCGCB: #G581658.  Under state law, the date of presentation is the date

16  of mailing, and construing the evidence in the light most favorable by Plaintiff, the date he

17  presented his claim was March 12, 2009, the date it appears his sister mailed the claim for him.[16]

18  Cal. Gov't Code § 915.2(a).  (Doc. 59-6, MSJ, Ex. A.)  Pursuant to the Board's letter dated April

19  6, 2009, Plaintiff's VCGCB claim served to exhaust facts or events which occurred between

20  September 12, 2008, and March 12, 2009.  (*Id.*, Ex. B.)  Plaintiff was subsequently notified by

21  letter dated May 28, 2009, that his claim had been rejected and he had six months to file suit.  (*Id.*,

22  Ex. C.)

23  ## 3.   Sufficiency of VCGCB Claim as to State Law Claims

24   Defendants move for judgment on Plaintiff's state law tort claims as barred by the

25  Government Claims Act because Plaintiff's VCGCB claim did not include any allegations arising

26  on or after October 30, 2008.   In response, Plaintiff argues that he stated in the claim form

27

28  [16] The parties agree that the claim was filed on March 24, 2009, but that was the date it was received.

1  "October 30, 2008, and continuing;" his filings are entitled to liberal construction; and he

2  substantially complied with the claims statute.  (Doc. 118, Opp., 12:18-21; 43:24-44:1.)

3      State law "requires that the claim state the 'date, place, and other circumstances of the

4  occurrence or transaction which gave rise to the claim asserted,'" and provide "'[a] general

5  description of the . . . injury, damage or loss incurred so far as it may be known at the time of

6  presentation of the claim.'"  *Stockett v. Ass'n of California Water Agencies Joint Powers Ins.*

7  *Auth.*, 34 Cal.4th 441, 445-47, 99 P.3d 500, 20 Cal.Rptr.3d 176 (Cal. 2004) (quoting Cal. Gov't

8  Code § 910).  The purpose of the statutes is "to provide the public entity sufficient information to

9  enable it to adequately investigate claims and to settle them, if appropriate, without the expense of

10  litigation."  *Stockett*, 34 Cal.4th at 446 (citations omitted).  "Consequently, a claim need not

11  contain the detail and specificity required of a pleading, but need only "fairly describe what [the]

12  entity is alleged to have done."  *Id.*  (citations omitted).  "As the purpose of the claim is to give the

13  government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate

14  meritorious actions, the claims statute should not be applied to snare the unwary where its purpose

15  has been satisfied."  *Id.* (internal quotation marks and citations omitted).

16      Plaintiff's VCGCB claim was limited by the Board to the time period of September 12,

17  2008, to March 12, 2009.  Any argument to the contrary is meritless in light of the Board's letter

18  dated April 6, 2009.  In addition, under no circumstance would the vague description "and

19  continuing" suffice to place an entity on notice of events not more specifically described in the

20  claim form.  *Stockett*, 34 Cal.4th at 449.  Plaintiff's claim need only give "adequate information

21  for the public entity to investigate," and therefore, the Court finds it is sufficient with respect to

22  Plaintiff's claims arising out of the retaliatory confiscation of his property on October 30, 2008,

23  including loss of his legal material and clothing, which caused him to be cold and prevented him

24  from having yard access.  The issue of the sufficiency of Plaintiff's VCGCB claim as to his legal

25  state law claims pled in this action is ultimately moot, however, for the reason which follows.

26  ///

27  ///

28  ///

22

### 4.     Six-Month Statute of Limitations

Defendants also argue that notwithstanding which legal state law claims were exhausted by Plaintiff's VCGCB claim, they are entitled to judgment on his state law claims because he failed to file suit within six months from the denial of his claim.

Plaintiff concedes that he failed to file suit within six months of his claim rejection, but he argues that he filed suit on his federal claims as soon as it was practical for him and he invoked supplemental jurisdiction to include his state law claims, in advancement of the statutory goal of preventing duplication of cases and resources.   (Doc. 118, Opp., 12:21-13; 19:11-21; 43:4-23; 44:18-22; 75:4-20.)   Citing *Wilson v. Garcia*, 471 U.S. 261, 266-67, 105 S.Ct. 1938 (1985) and *Donovan v. Reinhold*, 433 F.2d 738 (9th Cir. 1970), Plaintiff also argues that enforcement of the six-month limitation period is inconsistent with federal law and that application of the six-month limitation period would impermissibly interfere with the four-year period within which he is entitled to bring suit in federal court on his section 1983 claims.[17]   Finally, Plaintiff again argues that he substantially complied with the Government Claims Act.

Plaintiff's arguments conflate a number of separate issues, but regardless, the arguments lack merit.   With respect to Plaintiff's contention that he had not completed researching and drafting his federal claims within six months, and pursuit of two separate cases in federal and state court would have resulted in duplication and waste, he is correct that supplemental jurisdiction "is designed to enable courts to handle cases involving state-law claims in the way that will best accommodate the values of economy, convenience, fairness, and comity. . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, (1966)).   However, Plaintiff is incorrect that his invocation of supplemental jurisdiction over his state law tort claims in this federal suit exempts his state law claims from the Government Claims Act's six-month statute of limitations and/or that because the six-month statute of limitations is "inconsistent" with the more generous four-year limitation period that applies to his section 1983 claims, it does not apply.

---

[17] The statute of limitations for section 1983 claims is two years and prisoners serving a sentence of less than life are entitled to a two-year tolling period, which entitled Plaintiff to a four-year period within which to bring his section 1983 claims.  Cal. Civ. Proc. Code §§ 335.1, 352.1; *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004).

At issue in *Wilson* and *Donovan*, cited by Plaintiff, was the statute of limitations applicable to section 1983 claims, and neither decision supports the proposition advanced by Plaintiff: that the limitations period applicable to section 1983 claims also applies to his state law claims against public entity employees.  *Wilson*, 471 U.S. at 266-67 ("When Congress has not established a time limitation for a federal case of action, the settled practice has been to adopt a local time limitation as to federal law if it is not inconsistent with federal law or policy to do so."); *Donovan* 433 F.2d at 741-42 (rejecting argument that limitations and claims provisions of Tort Claims Act (Government Claims Act) should apply to section 1983 claim).  Unlike section 1983, which does not contain a limitations period, California has provided for a specific statute of limitations governing claims brought against public entities or their employees.  *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d 691, (9th Cir. 2003) (citing *Silva v. Crain*, 169 F.3d 608, (9th Cir. 1999)) (Section 945.6 is a special statute of limitations which governs claims under the Government Claims Act).  "[T]he intent of the Government Claims Act is not to expand the rights of plaintiffs against government entities but to confine potential governmental liability to rigidly delineated circumstances," and compliance with the Government Claims Act is an element of Plaintiff's state law tort claims which he is required to prove.  *DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal.4th 983, 991, 289 P.3d 884, 888 (Cal. 2012) (citations and internal quotation marks omitted); *Atchison, Topeka & Santa Fe Ry. Co. v. Stockton Port Dist.*, 140 Cal.App.3d 111, 115, 189 Cal.Rptr. 208 (Cal. Ct. App. 1983); *Chase v. State of California*, 67 Cal.App.3d 808, 812, 136 Cal.Rptr. 833 (Cal. Ct. App. 1977).  The argument that the existence of supplemental jurisdiction over Plaintiff's state law claims exempts him from having to comply with the Government Claims Act is untenable.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621 (pendent state law claims barred unless plaintiff complied with Government Claims Act); *Survive v. Cottle*, No. CV F 12-1453 LJO JLT, 2013 WL 103576, at *7, 9 (E.D.Cal. Jan. 8, 2013) (plaintiffs' argument that state law fraud claim subject to section 1376(a) supplemental jurisdiction avoids Government Claims Act is "nonsense"); *Creighton v. City of Livingston*, 628 F.Supp.2d 1199, 1224-25 (E.D.Cal. 2009) (plaintiff's supplemental state law claims barred unless he complied with Government Claims Act requirements).

1    Finally, Plaintiff's substantial compliance argument is also rejected.  It is unclear to what

2    extent the doctrine of substantial compliance has survived the *DiCampli* decision, *see Wride v.*

3    *Fresno Cnty.*, No. 1:05-cv-00486-AWI-SKO (PC), 2013 WL 5146445, at *10 (E.D.Cal. Sep. 12,

4    2013) (in light of *DiCampli*, declining to carve out an exception based on substantial compliance

5    where the plaintiff filed suit prematurely, prior to compliance with Government Claims Act)

6    (adopted in full on Sep. 26, 2013), but the doctrine of substantial compliance cannot be invoked to

7    excuse compliance with the statute of limitations, *Orr v. City of Stockton*, 150 Cal.App.4th 622,

8    636, 58 Cal.Rptr.3d 662 (Cal Ct. App. 2007) (citing *Hunter v. Cnty. of Los Angeles*, 262 Cal.

9    App.2d 820, 821-22, 69 Cal. Rptr. 288 (Cal. Ct. App. 1968) (late filing of suit may not be excused

10   on ground of substantial compliance)); *Ard v. Cnty. of Contra Costa*, 93 Cal.App.4th 339, 346,

11   112 Cal.Rptr. 886 (Cal. Ct. App. 2001) (liberality of claims statutes does not extend to prescribed

12   statutes of limitation, which are mandatory and require strict compliance).  Plaintiff waited

13   approximately sixteen months from the date of the rejection letter before filing suit, thereby

14   exceeding the six-month statute of limitations by approximately ten months.  Moreover, even if

15   the Court were to assume the doctrine of substantial compliance might apply in some

16   circumstances, neither Plaintiff's lack of readiness to file suit on his federal claims due to his

17   desire to complete researching and drafting them nor his entitlement to a more generous four-year

18   period within which to bring his claims under section 1983 supports the existence of substantial

19   compliance with the six-month Government Claims Act statute of limitations.  *Loehr v. Ventura*

20   *Cnty. Comty. Coll. Dist.*, 147 Cal.App.3d 1071, 1083, 195 Cal.Rptr. 576 (Cal. Ct. App. 1983)

21   (doctrine of substantial compliance does not remedy the failure to comply meaningfully with the

22   statute).

23       Accordingly, the Court finds that Plaintiff's state law claims are barred by the Government

24   Claims Act's six-month statute of limitations, and it recommends Defendants' motion for

25   summary judgment as to these claims be granted.

26   ///

27   ///

28   ///

**III.   Recommendation**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1.   Plaintiff's motion to strike, filed on June 12, 2014, and motion for sanctions, set forth in his reply, be DENIED;

2.   Defendants' motion for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies, filed on May 21, 2014, be DENIED as follows:

   a.   Defendants' motion be DENIED as to the excessive force claim against Defendant Gray on the ground that the claim was exhausted;

   b.   Defendants' motion be DENIED as to the denial of adequate clothing and linens while housed in a cold cell on the ground that the claim was exhausted;

   c.   Defendants' motion be GRANTED as to the denial of adequate exercise on the ground that the claim was not exhausted;

   d.   Defendants' motion be DENIED as to the retaliatory property deprivation claim on the ground that the claim was exhausted;

   e.   Defendants' motion be GRANTED as to the issuance of retaliatory chronos on November 10, 2008, and June 22, 2009 on the ground that the claims were not exhausted;

   f.   Defendants' motion be DENIED as to the allegedly retaliatory incidents which occurred on July 22, 2009, July 24, 2009, and September 30, 2009, on the ground that there are disputed factual issues requiring an evidentiary hearing; and

   f.   Defendants' motion be GRANTED as to the state law claims on the ground that they are time barred under the Government Claims Act; and

3.   Plaintiff's request for the appointment of counsel to represent him during the evidentiary hearing be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).   Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.   Local Rule 304(b).   The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."   Responses, if any, are due within **fifteen (15) days** from the date the objections are filed.   Local Rule 304(d).   The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.   *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 23, 2015**                                      **/s/ Sheila K. Oberto**
                                                              UNITED STATES MAGISTRATE JUDGE