# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW R. LOPEZ,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW CATE, et al.,<br><br>Defendants. | Case No. 1:10-cv-1773-DAD-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATION AFTER EVIDENTIARY HEARING**<br><br>**(Docs. 105, 137, 141)**<br><br>**TWENTY-ONE (21) DAY DEADLINE** |

## INTRODUCTION

Plaintiff, Andrew R. Lopez, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 10, 2010. This action is currently proceeding on Plaintiff's First Amended Complaint, filed on March 23, 2012, against Defendants Garcia, Zamora, Espinosa, Jackson, Drew, Olmedo, Munoz, Fields, White, Rousseau, Martinez, Beer, Gray, Beard, and Gipson ("Defendants") for violating Plaintiff's federal constitutional rights. Plaintiff's claims arise out of his conditions of confinement at California State Prison, Corcoran ("CSP-Cor") in Corcoran, California in 2008 and 2009.

Defendants' motion for summary judgment[1] ("Defendants' Motion") asserting Plaintiff's failure to exhaust available administrative remedies prior to filing suit was resolved on the

---

[1] Defendants' originally raised exhaustion in a motion to dismiss (Doc. 59) which was denied, without prejudice, in light of *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). (Doc. 96.) In moving for summary judgment, Defendants cited to portions of their motion to dismiss and Plaintiff's oppositions, which included an opposition and three supplements. (Docs. 59, 66, 68, 69, 87.) In its opposition to the motion for summary judgment, Plaintiff also referred to these prior filings. The Court considered these filings in issuing the initial findings and recommendations on Defendants' Motion. (*See* Doc. 137.) The parties should not construe the absence of specific citations to multiple parts of the record as an indication the Court overlooked the underlying record.

1

majority of Plaintiff's claims.[2]  The Court found that a triable issue of fact existed necessitating an evidentiary hearing as to Plaintiff's retaliation claims against Defendants Garcia and Beer for incidents that allegedly occurred on July 22, 2009, July 24, 2009, and September 30, 2009.[3]  42 U.S.C. § 1997e(a), Fed. R. Civ. P. 56(a); *Williams v. Paramo*, 775 F.3d 1182, 1191-92 (9th Cir. 2015); *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014) (en banc); (*see* Docs. 137, 141).

An evidentiary hearing was held on August 23, 2016.  Plaintiff appeared *pro se* via video conference[4] and Deputy Attorney General, William J. Douglas, appeared in person on behalf of Defendants.  Defendants called the following witnesses to testify:  (1) Defendant Sergeant R. Beer (Electronic Court Recorded Transcript (ECRT) 10:20-11:42); (2) Associate Warden T. Campbell (ECRT 12:31-1:10); and (3) Appeals Coordinator S. Sandoval (1:11-1:36).  Plaintiff cross-examined the witnesses and testified on his own behalf (ECRT 1:36-1:50).  The following exhibits were admitted into evidence:  DX 200; DX 225; DX 226 (pp. 1-4); DX 227; and DX 228.  (Doc. 196.)  After closing arguments, the Court took the matter under submission and now makes its findings and recommendations.

For the reasons set forth below, the Court finds that Plaintiff presented credible evidence that he exhausted the administrative remedies that were available to him.  It is, therefore, recommended that Defendants' Motion for Summary Judgment on Plaintiff's retaliation claims against Defendants Garcia and Beer for the incidents that allegedly occurred on July 22, 2009, July 24, 2009, and September 30, 2009, be **DENIED**.

//

//

//

---

[2] Defendants' Motion was granted on a finding that Plaintiff had not exhausted his claims based on denial of adequate exercise and retaliatory issuance of chronos, and that Plaintiff's state law claims are time barred under the Government Claims Act.  The motion was denied on a finding that Plaintiff had properly exhausted his claims of excessive force against Defendant Gray, denial of adequate clothing and linens while housed in a cold cell, and of retaliatory property deprivation.  (*See* Docs. 137, 141.)

[3] The factual allegations of these claims are not essential to these findings and recommendations and are, therefore, not repeated.  However, they are stated in detail and can be reviewed in the initial findings and recommendations on Defendants' Motion.  (*See* Doc. 137, 16:3-19:18.)

[4] A stipulation for Plaintiff to appear via video conference at Plaintiff's request was approved on August 10, 2016.  (*See* Docs. 177, 183.)

**DISCUSSION**

**A.     Legal Standards**

    **1.     Statutory Exhaustion Requirement**

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532; 122 S.Ct. 983 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth,* 532 U.S. at 738.

    **2.     Summary Judgment Standard**

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[5] *Jones*, 549 U.S. at 216; *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their

---

[5] The Federal Rules of Civil Procedure will hereinafter be referred to as "Rule *." Any reference to other statutory authorities shall so indicate.

burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Plaintiff's filings must be liberally construed because he is a *pro se* prisoner. *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010). All inferences must be drawn in the light most favorable to Plaintiff as the nonmoving party. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

A defendant is only entitled to summary judgment if the undisputed evidence, viewed in the light most favorable to the prisoner, shows that administrative remedies were available to Plaintiff which he failed to exhaust. *Williams*, at 1166.

### a. Defendants' Motion

Defendants' Motion asserted that Plaintiff failed to properly exhaust his claims through the third formal level, and failed to file any inmate appeals regarding the July 22, 2009, July 24, 2009, and September 30, 2099 incidents of retaliation against Defendants Garcia and Beer. (Doc. 105-1, pp. 9-15.) Plaintiff's written opposition sufficed to raise a disputed issue of fact regarding his submission of inmate appeals regarding these instances as well as their loss, destruction, or misplacement by prison personnel which rendered the process effectively unavailable. *Williams*, 775 F.3d at 1191-92; *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010).

### 3. Evidentiary Hearing

If "summary judgment is not appropriate," on the issue of exhaustion, "the district judge may decide disputed questions of fact in a preliminary proceeding." *Albino*, 747 F.3d at 1168. When feasible, such questions of fact should be decided before addressing the merits of the claim. *Id*. at 1170. "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Id*. at 1171.

4

While the parties may be expected to simply reiterate their positions as stated in their briefs, "one of the purposes of an evidentiary hearing is to 'enable [ ] the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice.'" *United States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995). This assists the finder of fact in evaluating the witness' credibility. *Id*.

**B.     Findings on Plaintiff's Exhaustion of Available Administrative Remedies**

The issues at the evidentiary hearing were as follows: (1) whether Plaintiff submitted any inmate appeals on the July 22, 2009, July 24, 2009, and September 30, 2009 incidents of retaliation in compliance the procedural rules governing the inmate appeals process in 2009, and if so, (2) whether the process was rendered unavailable to him. *Sapp*, 623 F.3d at 822-23. The first step to resolving these issues is to define the generally available inmate appeals process at CSP-Cor in 2009.

**1.     CDCR's Generally Available Inmate Appeals Process**

The California Department of Corrections and Rehabilitation ("CDCR") has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on their welfare. Cal. Code Regs., tit. 15, § 3084.1. Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims, *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010). The regulations in Title 15 which govern CDCR's inmate appeals process were amended in 2011, but the relevant regulations are those which were in effect in 2009, when the events underlying Plaintiff's claims allegedly occurred. Therefore, the citations to Title 15 are those pre-amendment regulations in effect in 2009.

In 2009, an inmate would initiate the appeals process by submitting a CDC Form 602 describing "the problem and action requested," Cal. Code Regs., tit. 15, § 3084.2(a) (West 2009), "within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision," tit. 15, § 3084.6(c). Up to four levels of appeal could be involved, including an informal level, first formal level, second formal level, and third formal level (which was also known as the Director's Level). Tit. 15, § 3084.5.

## 2.     Appeals Process Within Plaintiff's Housing Unit

In 2009, Plaintiff was housed in 4B of the Secured Housing Unit ("SHU") at CSP-Cor. (ECRT 1:36-37.) Defendant Beer worked in housing unit 4B3 until June or July of 2009 and in 4B4 thereafter. (ECRT 10:20.) In 4B, on the wall near the holding cages, there were two locked wooden boxes for inmates to deposit inmate appeals. (ECRT 10:24-25, 10:53-54, 11:02; *see also* Exh. DX-226, p. 2.) The boxes were approximately one foot by one foot in size and had large fairly easy to read black lettering[6] that identified one box for submission of formal appeals and the other for lower level appeals. (*Id.,* ECRT 11:17-18.) Inmates could submit appeals by placing them in the corresponding box anytime they were being escorted through the facility, or when they were in the holding tank for haircuts and other activities. (ECRT 10:26.) An inmate could also submit an appeal by placing it with mail to be picked up by staff, giving it to staff during any of the three daily inmate counts, or giving it to medical personnel who were in and out of the SHU several times a day. (ECRT 10:26-27.) The parties stipulated that Plaintiff was familiar with the process for filing appeals in the CSP-Cor SHU in 2009. (ECRT 10:23.)

Defendant Beer testified that the watch supervisor of each housing unit (first, second, or third) had possession of the key to the appeal boxes, which was passed to the incoming supervisor at shift change. (ECRT 11:01-02, 11:04.) As the third watch supervisor, when on duty, Defendant Beer had a key for the appeals boxes in Plaintiff's housing unit in 2009. (*Id.*) Defendant Beer was required to collect inmate appeals from both appeal boxes during his shift, which he took to his office located in a hallway between the rotundas. (ECRT 10:29, 10:42.) Inmates do not traverse the hallway or have access to his office which has a lock on it, and cannot see into it. (*Id.*)

Defendant Beer would review all inmate appeals collected from the appeals boxes in his office, attach a routing slip, and forward them for processing. (ECRT 10:29-30; 53-54, 12:34-36; *see also* Exhibit DX-226, p. 2.) During this sorting process, Defendant Beer would track informal appeals in a log book and direct them to the appropriate person to address the issue (i.e. an issue

---

[6] The lettering was approximately 4 to 6 inches in height. (ECRT 11:17-18.)

1    with canteen would go to canteen, an issue with clothing, would go to clothing, etc.).  (*Id.*, *see*
2    *also* ECRT 10:31.)  These logs were printed at the end of the month and placed in a binder for
3    review by the Facility Captain.  (ECRT 10:32.)  None of the logs from 2009 still exist–as they
4    were only retained for a maximum of two years.  (ECRT 10:33.)  Defendant Beer would also
5    review appeals from the formal appeal box.  He would make sure they were formal appeals, note
6    their receipt in the log, and send them to the program office where they would be placed in the
7    slot for the appeals coordinator (who would track their processing).  (ECRT 10:31, 10:39-41,
8    10:55; 11:03.)  If an appeal was not a formal appeal, such as when an inmate mistakenly placed
9    an appeal in the wrong box, Defendant Beer would route it to an informal level.  (ECRT 11:15-
10   16.)

### 3. Plaintiff's Use of the Inmate Appeals Process

12        The parties stipulated that, in 2009, Plaintiff was very familiar with the appeals process at
13   CSP-Cor.  (ECRT 10:24.)  Plaintiff used CSP-Cor's appeals system approximately 188 times at
14   the lower levels, (ECRT 12:51) and exhausted twenty-six appeals through the Director's Level
15   (ECRT 1:17-18).  Plaintiff filed over 300 inmate appeals during his incarceration at CSP-Cor.
16   (ECRT 1:39; *see also* Doc. 105-3, p. 2, Doc. 21, ¶¶4-5, 7-9.)  Plaintiff filed inmate appeals on
17   various issues such as to obtain soap, copies of documents, access to the law library, his legal
18   materials, living conditions, his custody classification, medical issues, and staff complaints.
19   (ECRT 1:40; DX 200.)  Plaintiff convincingly argued that it defies common sense that he would
20   have filed appeals on menial issues such as soap, but would not have filed an appeal on the acts of
21   retaliation at issue here.  (ECRT 1:03, 1:40.)

22        Plaintiff submitted a declaration in opposition to Defendants' Motion and credibly
23   testified that he placed an inmate appeal on the July 22, 2009, and July 24, 2009 incidents as well
24   as another appeal on the September 30, 2009 incident in the box for formal appeals in his unit, but
25   never received a response to either of these appeals.  (ECRT 1:37-49; Doc. 68, Lopez Decl., ¶8;
26   Doc. 66, pp. 5-8.)   The informal levels were waived at CSP-Cor in 2009 for inmate appeals
27   alleging misconduct by a departmental peace officer; such issues were to be forwarded directly to
28   the Appeals Office for handling.  (DX 228, p. 5, tit. 15 §3084.5(a)(3)(G), Doc. 87, p. 15.)

Plaintiff asserts that he complied with applicable procedures when he placed his appeals on the retaliation events at issue here in the box for formal appeals.

Defendants argue that Plaintiff did not file appeals on the July 22, 2009, July 24, 2009, and September 30, 2009 incidents because their records do not reflect that Plaintiff filed such appeals. They contend that Plaintiff fabricated these appeals for the sole purpose of opposing their motion. Defendants' supporting evidence shows that, in 2009, CSP-Cor had a system for tracking inmate appeals filed at all levels. (ECRT 10:29-10:42, 10:53-55 (informal appeals); ECRT 10:55, 11:35-36, 12:33-51 (1st & 2nd formal levels); ECRT 10:55, 1:17, 1:22 (3rd formal/Director's level).) The parties stipulated that Defendants have no record of Plaintiff pursuing an appeal alleging he was subjected to retaliation on any of the three dates at issue, to any level of their grievance process -- let alone the Director's Level of review. (ECRT 1:01, 1:19 -1:20.)

While Defendants' evidence showed Defendant Beer's method for handling inmate appeals he retrieved from the appeal boxes, they offered no evidence on the handling of inmate appeals by other sergeants. Defendant Beer testified that he can only speak for his processes in handling inmate appeals, and he is unable to state how other supervisors processed inmate appeals from either box. (ECRT 11:05.) He specifically stated that he has "no idea" how other supervisors process inmate appeals. (ECRT 11:05.) Defendant Beer also testified that he has no basis to testify, and there is no way for him to be 100% certain, as to how inmate appeals are handled on the shifts when he is not on duty. (ECRT 11:31.) The evidence also showed that if an appeal was lost, mishandled, or misplaced it would not be reflected on the tracking logs and there would not be any information on it. (ECRT 1:04, 1:07.)

The fact that Defendants' records do not show Plaintiff filed an appeal on the three incidents of alleged retaliation at issue here is not dispositive of the issue. The absence of evidence that an appeal was officially filed may indicate, as Defendants contend, that Plaintiff never submitted the appeal. It may also, however, indicate that the grievance was discarded or ignored by staff, as Plaintiff contends. *See Spence v. Director of Corr.,* 2007 WL 61006, No. CIV S-05-0690 GEB KFM PC, *3 (E.D.Cal. Jan. 8, 2007) (If prison officials "are interfering with

1  inmates' ability to properly file their 602s, then there will be no official record of the 602s having
2  been 'accepted.'"), *findings and recommendations adopted in full*, 2007 WL 738528 (E.D.Cal.
3  Mar. 6, 2007).

### 4.     The September 30, 2009 Incident

5  Plaintiff's appeal, dated October 6, 2009, was previously found sufficient to have placed
6  prison staff on notice of the substance of Plaintiff's September 20, 2009 retaliation claim.  (Doc.
7  137, 17:22-19:18; Doc. 66, pp. 5-8.)  There was no argument or evidence presented at the
8  evidentiary hearing to change this finding.  The question then becomes whether Plaintiff's
9  evidence on the existence of that appeal is sufficient to overcome Defendants' argument that,
10 because their records do not show it was received for processing, it did not exist in 2009 and
11 Plaintiff never submitted it.

12 The evidence shows that, in 2009, CSP-Cor had a policy which did not allow inmate
13 appeals to be copied.  (ECRT 1:41; Doc. 118, p. 99.)  Plaintiff testified that he obtained copies of
14 the appeals at issue by hiding them among other documents he submitted for copying at CSP-Cor.
15 (ECRT 1:38, 1:41.)  Defendants contend that CSP-Cor's prohibition on copying demonstrates that
16 Plaintiff self-servingly wrote the October 6, 2009 appeal for the sole purpose of opposing their
17 motion.  Defendants argue that, to accept Plaintiff's scenario, Plaintiff would have had to obtain
18 copies of the October 6, 2009 appeal, not just once, but three times:  (1) before placing it in the
19 formal appeals box, in anticipation of it being lost; (2) before attaching a copy of it to the appeal
20 Plaintiff testified he filed in November of 2009, when he received no response to the October 6,
21 2009 appeal; and (3) before attaching it as an exhibit to his opposition to Defendants' Motion.
22 (ECRT 1:53-55.)  Plaintiff credibly responded that he obtained three copies of the October 6,
23 2009 appeal when he first included it with other documents claiming he "had to copy discovery or
24 something," so he could three copies: have one copy for the Attorney General's Office, one for
25 the Court, and one for his own records.  (ECRT 1:58.)

26 Defendants contend that, despite having attached numerous other exhibits, Plaintiff did
27 not attach the October 6, 2009 appeal to his original Complaint, or to the First Amended
28 Complaint.  (ECRT 1:52-54.)  As Plaintiff noted (ECRT 1:57), he was not required to attach a

9

copy of any inmate appeal to his pleading as exhaustion is an affirmative defense, not a pleading requirement. *Jones v. Bock,* 549 U.S. 199, 216, 127 S.Ct. 910 (2007). Plaintiff also correctly pointed out that, although he had no obligation to do so, he did mention this appeal at paragraph 64 of the First Amended Complaint. (ECRT 1:57, *see also* Doc. 21, ¶ 64.)

### 5. The July 22, 2009, and July 24, 2009 Incidents

Defendants question Plaintiff's explanation for the circumstances under which he discovered an appeal, dated July 28, 2009,[7] that he asserts he filed regarding the July 22, 2009, and July 24, 2009 incidents. (ECRT 1:56; Doc. 191, pp. 173-175.) Defendants argue that, since the issue of Plaintiff's exhaustion has been pending for a number of years and this was the third date set for the evidentiary hearing, it is defies common sense that Plaintiff just recently found a copy of this appeal and sent it to an attorney to be copied in time for use at this hearing. (ECRT 1:56.) However, throughout the course of this litigation, Plaintiff has raised the issue of difficulty accessing the required documents for his pursuit of this action, including those needed to oppose Defendants' Motion. (*See* Docs. 64, 66, 68, 69, 77, 87, 109, 111, 163.) After an evidentiary hearing was initially scheduled for October 22, 2015, (Doc. 143), Plaintiff was transferred from CSP-Cor to CSP-Sacramento (Doc. 155) and then to Pelican Bay State Prison (PBSP) (Doc. 158). Telephonic conferences were held specifically to address Plaintiff's inability to access legal property he asserted was needed to adequately oppose Defendants' Motion. (Docs. 166, 168, 169.) As recently as March of this year, Plaintiff still was not in possession of all of his legal documents required to oppose the Motion. (*Id.*) There is more than ample evidence in the record to find that Plaintiff did *not* have access to the documents he presents in opposition to Defendants' Motion until a few months before to the Evidentiary Hearing.

//

---

[7] Prior to the hearing, this document was stricken from the record. (*See* Docs. 191, 192.) However, Plaintiff testified both as to its contents and his filing of it in the box for formal appeals without defense objection. (*See* ECRT 1:37, 1:42-49.) Defendant declined to cross-examine Plaintiff on *any* of his testimony. (ECRT 1:50.) Further, though briefly commenting that this document was previously stricken from the record, as discussed in this section, Defense counsel addressed this appeal in closing arguments and argued that Plaintiff's explanation of its belated discovery and production lacks credibility. (ECRT 1:56.) Defense counsel also referred to the numbering system used by Plaintiff for his set of exhibits that was stricken from the record, in closing arguments. (ECRT 1:53, citing PX-102 from Doc. 191.) Thus, Defendants waived objection to consideration of the July 28, 2009 appeal.

Plaintiff offered credible testimony that he placed an appeal regarding the July 22, 2009, and July 24, 2009 incidents in the box for formal appeals, and that he did not know he had a copy of it until he uncovered it among his papers a few months before the evidentiary hearing -- when he finally was able to access all thirty-five boxes of his legal property. (ECRT 1:37, 1:48.) Plaintiff testified that he found the appeal folded in an envelope from the Ninth Circuit "from back in 2008-2009." (ECRT 1:48.) This is consistent with Plaintiff's testimony that, because of CSP-Cor's policy prohibiting copying of inmate appeals, the only way he was able to obtain copies of the appeals in question was by hiding them in other documents that were allowed to be copied. (ECRT 1:38, 1:41; Doc. 118, p. 99.) When Plaintiff received his boxes of legal property and discovered it, "to be safe" he sent it to his attorney in another matter (as it was old, delicate, and brittle from being "folded up for years") who copied it for Plaintiff's use here. (ECRT 1:46.) The Court finds Plaintiff's explanation as to why he did not have the July 2009 appeal available for earlier disclosure to be credible and supported by factual precedent. *Richards*, 602 F. Supp. at 1244-45.

The July 2009 appeal clearly raised the July 22, 2009 retaliatory incident where Plaintiff alleges Defendants Garcia and Beer attempted to cell him with an enemy inmate. (Doc. 191, pp. 173, 175.) When questioned by the Court, Plaintiff had no explanation why the July appeal only reflected the July 22, 2009 incident of alleged retaliation, but neither reflected the date, nor the factual basis for his July 24, 2009 retaliation claim -- as he asserted in opposition to Defendants' Motion. (ECRT 1:47.)

Although Plaintiff's July 2009 appeal did not contain the specific facts of his July 24, 2009 retaliation claim against Defendants Garcia and Beer, in 2009, allegations of specific facts upon which an eventual legal action would be premised were not required for exhaustion purposes. At that time, a grievance was neither required to contain facts necessary to prove the elements of an eventual legal claim, nor was it required to include legal terminology or theories unless they were in some way necessary to provide notice of the harm being grieved. *Griffin v. Arpaio* 557 F.3d 1117, 1120 (9th Cir. 2009). "[W]hen a prison's grievance procedures [were] silent or incomplete as to factual specificity, 'a grievance suffice[d] if it alert[ed] the prison to the

1  nature of the wrong for which redress [was] sought.'" *Id.* citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). The description required under CDCR's administrative grievance process in 2009 required that an inmate ~~to~~ "Describe Problem" which equated to requiring an inmate "to notify the prison of a problem and facilitate its resolution, not to lay groundwork for litigation." *Id. ref Johnson v. Johnson*, 385 F.3d 503, 522 (2004) *cited with approval in Jones v. Bock,* 549 U.S. 199, 219 (2007) (*see* Doc. 66, p. 6, Doc. 191, p. 173). In 2009, a prisoner's grievance was only required to "provide enough information . . . to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2nd Cir. 2004).

Here, Plaintiff's July 2009 appeal placed prison officials on notice that Defendants Garcia and Beer were retaliating against Plaintiff by various means because of his prolific appeal and litigation activities. Even though Plaintiff's July 2009 appeal neither set forth the July 24, 2009 date, nor the circumstances under which Plaintiff's allegations on that date were found cognizable, it raised retaliatory activities by Defendants Garcia and Beer to place prison officials on notice that appropriate responsive measures may be required. *Id.*

Drawing all inferences in the light most favorable to Plaintiff, *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 942, *Richards*, 602 F. Supp. at 1244-45, the Court finds that Plaintiff exhausted the administrative remedies that were available to him on his retaliation claims against Defendants Garcia and Beer based on events that allegedly occurred on July 22, 2009, July 24, 2009, and September 30, 2009.

It is unclear whether Plaintiff's July 2009 and October 6, 2009 appeals were innocently misplaced or maliciously destroyed. For the present purposes, however, it does not matter. It also matters not that Plaintiff failed to contact the Warden, Ombudsman, the Appeals Coordinator, or anyone else to ascertain what had become of these two appeals when he did not receive a corresponding response. Though Plaintiff was not prohibited from following up with any other prison staff, no such actions were required under CDCR's appeal process in 2009,and Plaintiff cannot be faulted for failing to take actions which were not required. (ECRT 12:59, 1:21-24.)

~~#~~

In sum, Plaintiff attempted to file timely, sufficient appeals, and the prison's lack of response rendered the process thereafter unavailable to him. *Williams*, 775 F.3d at 1191-92; *Sapp*, 623 F.3d at 822-23.

## CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff submitted credible evidence that he followed the proper appeal procedure when he timely placed an inmate appeal on: (1) the July 22, 2009, and July 24, 2009 retaliation claim, and (2) his September 30, 2009 retaliation claim against Defendants Garcia and Beer, in the formal appeal box which sufficed to place prison staff on notice of the substance of Plaintiff's claims. The Court also finds that the process was thereafter rendered unavailable to Plaintiff when his appeals were not returned to him. Accordingly, Defendants are not entitled to summary judgment based on Plaintiff's failure to exhaust available administrative remedies prior to filing suit on his retaliation claims against Defendants Garcia and Beer based on events that allegedly occurred on July 22, 2009, July 24, 2009, and September 30, 2009 under section 1997e(a).

Based upon these Findings of Fact and Conclusions of Law, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment based on Plaintiff's failure to exhaust available administrative remedies as to Plaintiff's retaliation claims under the First Amendment against Defendants Garcia and Beer based on events that occurred on July 22, 2009, July 24, 2009, and September 30, 2009 be **DENIED**.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, any party may file written objections with the court. L.R. 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v.*

//

//

//

13

*Wheeler,* 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 8, 2016**                    /s/ *Sheila K. Oberto*
                                                          UNITED STATES MAGISTRATE JUDGE